**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:17-cv-01430 Judge Robert M. Dow |
| vs. | ) ) | |
| COOK COUNTY, ILLINOIS, | ) ) | |
| Defendants. | ) ) | |
| COOK COUNTY, ILLINOIS, | ) ) | |
| Counter-Plaintiff, | ) ) | |
| vs. | ) ) | |
| STARR INDEMNITY & LIABILITY COMPANY and AXIS SURPLUS INSURANCE COMPANY, | ) ) ) ) | |
| Counter-Defendants. | ) | |

**COOK COUNTY'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION
TO STARR INDEMNITY & LIABILITY COMPANY AND AXIS SURPLUS
<u>INSURANCE COMPANY'S MOTIONS FOR SUMMARY JUDGMENT</u>**

Kenneth S. Ulrich
A. Colin Wexler
GOLDBERG KOHN LTD.
55 E. Monroe St., Suite 3300
Chicago, IL 60603
(312) 201-4000

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................ 1

II. BACKGROUND REGARDING SETTLEMENTS ........................................................ 3

III. ARGUMENT .................................................................................................................. 5

    A. The Arguments Raised By The Carriers That The County Would Have Prevailed On The Claims Brought By The Englewood Four Is Irrelevant To The Coverage Issues Raised In This Case ................................................................................. 6

    B. There Can Be No Dispute That The County's Legal Liability For Malicious Prosecution Is A Covered Claim Under The Policies ........................................... 8

    C. The County Faced A Substantial Risk That The Court Would Conclude That It Was Legally Required To Indemnify The ASAs For Any Judgment Entered Against Them ................................................................................................... 11

    D. Contrary To The Carriers' Arguments, The Cases On Which The Carriers Rely Do Not Stand For The Proposition That The County Has No Legal Obligation To Indemnify ASAs ................................................................................................... 18

    E. The Carrier's Remaining Arguments Are Irrelevant ....................................... 25

        1. AXIS May Not Rely On The Carriers' Refusal To Participate In Settlement To Avoid Liability .................................................................. 25

        2. Starr's Remaining Arguments Concerning Indemnification Are Inapplicable ...................................................................................................... 26

IV. CONCLUSION ............................................................................................................. 27

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Armour v. Country Club Hills*,
    No. 11 C 5029, 2012 WL 4499050 (N.D. Ill. Sept. 27, 2012)................................... passim

*Askew v. Sherriff of Cook Cty.*,
    568 F.3d 632 (7th Cir. 2009) ................................................................................ passim

*Biggerstaff v. Moran*,
    671 N.E.2d 781 (Ill. App. Ct. 1996) ................................................................................ 18

*Cannon v. Burge*,
    No. 05 C 2192, 2006 WL 273544 (N.D. Ill. Feb. 2, 2006)...................................... passim

*Carver v. Sheriff of LaSalle County*,
    203 Ill. 2d 497 (2003) .............................................................................................. passim

*Carver v. Sheriff of LaSalle Cty.*,
    243 F.3d 379 (7th Cir. 2001) .................................................................................... passim

*Carver v. Sheriff of LaSalle Cty.*,
    324 F.3d 947 (7th Cir. 2003) ........................................................................... 14, 16, 27

*Cent. Mut. Ins. Co. v. Tracy's Treasures, Inc.*,
    2014 IL App (1st) 123339........................................................................................... 26

*Commonwealth Edison Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
    323 Ill. App. 3d 970 (1st Dist. 2001) ................................................................ 2, 7, 8, 26

*Federal Ins. Co. v. Binney & Smith, Inc.*,
    393 Ill. App. 3d 277 (1st. Dist. 2009) .......................................................................... 6, 7

*Flodine v. State Farm Ins. Co.*,
    No. 99 C 7466, 2003 WL 1394977 (N.D. Ill. Mar. 19, 2003) ......................................... 25

*Guillen v. Potomac Ins. Co. of Illinois*,
    203 Ill. 2d 141 (2003) ............................................................................................ 2, 3, 5

*Hobbs v. Cappelluti*,
    899 F. Supp. 2d 738 (N.D. Ill. 2012) ........................................................................... 20

*Holmes v. Curran*,
    No. 17 C 3031, 2018 WL 2933648 (N.D. Ill. June 12, 2018) ......................................... 21

*Houston v. Cook Cty.*,
    758 F. Supp. 1225 (N.D. Ill. 1990) .............................................................................. 18

*Klingler v. City of Chicago*,
No. 15-CV-1609, 2017 WL 4742192 (N.D. Ill. Oct. 20, 2017) ................................ 22, 23

*Luria Brothers & Co. v. Alliance Assurance Co.*,
780 F.2d 1082 (2nd Cir. 1986) ........................................................................................ 6

*Mathlock as next friend of J.R. v. Fleming*,
No. 18 CV 6406, 2019 WL 2866726 (N.D. Ill. July 3, 2019) ................................... 19, 20

*McCullough v. Hanley*,
No. 17 C 50116, 2018 WL 3496093 (N.D. Ill. July 20, 2018) ........................... 17, 18, 21

*McFatridge v. Madigan*,
2013 IL 113676 ............................................................................................................... 26

*Myoda Computer Ctr., Inc. v. Am. Family Mut. Ins. Co.*,
389 Ill. App. 3d 419 (1st Dist. 2009) ............................................................................. 26

*Nat'l Cas. Co. v. White Mountains Reinsurance Co. of Am.*,
735 F.3d 549 (7th Cir. 2013) .................................................................................... 10, 11

*Patterson v. Burge*,
328 F. Supp. 2d 878 (N.D. Ill. 2004) ....................................................................... 14, 15

*Pekin Ins. Co. v. XData Sols., Inc.*,
2011 IL App (1st) 102769 ................................................................................................ 26

*Pucinski v. Cook County*,
192 Ill.2d 540, 249 Ill. Dec. 835, 737 N.E.2d 225 (2000) ............................................. 15

*Robinson v. Sappington*,
351 F.3d 338 (7th Cir. 2003) ....................................................................... 14, 15, 16, 17

*Roldan v. Town of Cicero*,
No. 17-CV-3707, 2018 WL 1469011 (N.D. Ill. Mar. 26, 2018) ...................................... 23

*Simms v. Cty. of Bureau*,
506 F.3d 509 (7th Cir. 2007) .......................................................................................... 22

*Stone v. Pepmeyer*,
2011 WL 1627076 (C.D. Ill. Apr. 28, 2011) ................................................................... 23

*Tillman v. Burge*,
813 F. Supp. 2d 946 (N.D. Ill. 2011) ........................................................................ 20, 22

*U.S. Gypsum Co. v. Admiral Ins. Co.*,
268 Ill. App. 3d 598 (1st Dist. 1994) ............................................................................... 6

-iii-

*Wallace v. Masterson*,
   345 F. Supp. 2d 917 (N.D. Ill. 2004) ........................................................................ 16, 24

**<u>Statutes</u>**

745 ILCS 10/9-102 ................................................................................................... passim

State Employee Indemnification Act, 5 ILCS 350/2 .................................................... 26

**COOK COUNTY'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION
TO STARR INDEMNITY & LIABILITY COMPANY AND AXIS SURPLUS
<u>INSURANCE COMPANY'S MOTIONS FOR SUMMARY JUDGMENT</u>**

## I.    INTRODUCTION

Plaintiffs seek summary judgment based upon a series of immaterial legal arguments that do not control resolution of this lawsuit.  While parties frequently dispute the facts in summary judgment briefing, the parties here dispute which legal issues are dispositive.  The coverage dispute before this Court concerns (i) whether the claims brought against Cook County (the "County") in the Englewood Four cases[1] are covered under the Starr Indemnity & Liability Company ("Starr") and the AXIS Surplus Insurance Company ("AXIS," jointly with Starr, the "Carriers"), policies (the "Policies"); and if so (ii) whether, based on the totality of the circumstances, the County's settlements of those covered claims were reasonable in light of the County's exposure and risk of loss.  The Carriers fail to discuss either issue in their summary judgment motions (the "Motions"), likely because the factual issues inherent in the analysis would preclude summary judgment on the bare factual record that the Carriers have presented. Instead, the Carriers argue that as a matter of law, they are not required to indemnify the County for settlements of the underlying Englewood Four cases because, in their view, the County does not have a legal duty to indemnify Assistant State's Attorneys ("ASAs"), and therefore, the County would have prevailed in the Englewood Four cases and not been liable to the Englewood Four plaintiffs for any damages.  By ignoring the appropriate legal standard applicable to settlements of covered claims, the Carriers' Motions entirely miss the point and the legal issues before this Court, and they should be denied.

---

[1] The "Englewood Four" cases referenced herein are *Swift v. City of Chicago, et al.*, 12 C 9155, dismissed and refiled in the Circuit Court of Cook County, Illinois as Case No. 2012-L-012995; *Saunders v. City of Chicago, et al.*, 12 C 9158; *Thames v. City of Chicago, et al.*, 12 C 9170; and *Richardson v. City of Chicago, et al.*, 12-cv-9184.

There is a well-developed body of case law that considers whether a party that settles a covered claim should have coverage for that settlement, and that is the appropriate analysis for this coverage case. That case law, cited nowhere in either Starr's or AXIS's brief, is based on the seminal Illinois Supreme Court decision in *Guillen v. Potomac Ins. Co. of Illinois*, 203 Ill. 2d 141 (2003). In *Guillen*, the Illinois Supreme Court explained that determination of whether there is insurance coverage for a settlement entered into by an insured on a covered claim "involves a commonsense consideration of the totality of facts bearing on the liability and damages aspects of plaintiff's claim, as well as the risks of going to trial." *Id.* at 163 (internal quotations and citations omitted). Numerous courts in Illinois have made clear that an insured who settles a covered claim without an actual finding of liability need not prove that it would have actually lost such a claim. Rather, "in order to receive indemnification for [a] settlement payment . . . [the insured is] only required to show that it settled an otherwise covered loss in 'reasonable anticipation' of personal liability." *Commonwealth Edison Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 323 Ill. App. 3d 970, 981 (1st Dist. 2001) (hereinafter, "*ComEd*"). However, in their Motions, the Carriers ask this Court to do what the case law says it should not do in making a coverage determination – decide on the merits whether the County would have won or lost the underlying Englewood Four cases.

Indeed, it would make no sense for this Court to conclude that the mere fact that the County had a defense to the Englewood Four cases meant that the County was required to litigate that defense to a trial verdict in order to preserve coverage. Yet that is what the Carriers are arguing. They assert that they believe that the County could have won at trial, or earlier, by arguing that the County did not have a legal duty to indemnify the ASAs. While the County maintained such an argument, and used that argument as leverage in settlement negotiations, the

County was by no means assured of success with that argument. The case law strongly suggested that the County had a legal obligation to indemnify ASAs, and the County chose not to roll the dice. Like any other litigant, the County had the option of managing its litigation risks through settlement, and the standards set by the Illinois Supreme Court in *Guillen* make clear that the County does not jeopardize coverage by doing so. If the settlement was reasonable, given the totality of the circumstances, including a weighing of the County's legal defenses, then the Carriers must reimburse the County because there can be no doubt that the County's liability arising out of malicious prosecution is covered under the Policies. Ultimately, the County is no more a volunteer than any other defendant with plausible defenses to a lawsuit that assesses its risk and enters into a settlement in order to avoid liability in excess of the settlement amount. There will come a time when the Court is required to assess the reasonableness of the County's settlement, upon a more well-developed record, but as described in the *Guillen* case, such a hearing will come later. At that time, the Carriers will be free to argue that they believe that the settlement was too rich because of defenses available to the County. For now, this Court should deny the Carrier's Motions.

## II.     BACKGROUND REGARDING SETTLEMENTS

This matter concerns four related cases brought by four individual plaintiffs, collectively referred to as the Englewood Four, alleging that misconduct by Chicago police officers and Cook County Assistant State's Attorneys Terence Johnson and Fabio Valentini led to their wrongful convictions for a 1994 rape and murder. As a result of their convictions, each of the Englewood Four served at least 16 years in prison. After their convictions were overturned, and they received certificates of innocence, each filed a lawsuit in 2012. The Englewood Four cases all involved claims of malicious prosecution against ASAs Johnson and Valentini. The County

was also named as a defendant in the Englewood Four cases based on the claim that the County was legally obligated to indemnify the ASAs for any judgment entered against them.

In January 2017, the County notified the Carriers of a settlement offer made by the Englewood Four to resolve all four of the Englewood Four cases. *See* Rule 56.1(b) Statement of Additional Material Facts at ¶ 1. The parties agreed to conduct a mediation before Retired Circuit Court Judge Eileen Brewer. In a letter dated April 4, 2017, the County requested the Carriers' participation in that mediation. *See id.*, ¶ 2. Starr attended the mediation, but refused to offer any money in settlement of the Englewood Four cases during the mediation. *See id.*, ¶ 3. The County repeatedly requested that the Carriers participate in settlement negotiations. *See id.*, ¶ 4. Starr and AXIS have continued to fail to offer any funds in settlement of the Englewood Four cases. *See id.*, ¶ 5.

Ultimately the County was faced with a choice. It could choose to let the Englewood Four cases go to trial, which presented the risk of a judgment in an amount significantly above the amount of the settlements, or it could negotiate a reasonable settlement. This Court is well aware of the unique facts of the underlying Englewood Four cases, including the 302 Report. And, as discussed below, the case law created a substantial risk that this Court would hold that the County had a duty to indemnify the ASAs for the amount of such a judgment. Faced with abandonment by the Carriers, the County did precisely what Illinois Supreme Court precedent instructs – the County acted as if it was a prudent uninsured, assessed its potential liability and risks associated with a trial of the Englewood Four cases, and negotiated resolutions of the liability it was facing, paying the entire settlement out of its own coffers. The County settled the *Swift* case on the eve of trial within its $10 million self-insured retention, and the County ultimately negotiated in good faith with the remaining three plaintiffs in the Englewood Four

cases, those efforts culminating in a settlement achieved with the substantial assistance of Magistrate Judge Gilbert. The settlement reached called for the County to pay the plaintiffs in the *Saunders*, *Thames*, and *Richardson* lawsuits a total of $23.97 million, which the County tendered following this Court's entry of its Order Regarding Motion for Findings of Good Faith, pursuant to which this Court found "that the settlement is just, reasonable, and was in good faith." 12-CV-019158, Docket No. 644.

## III. ARGUMENT

The Carriers' Motions ignore the well-settled governing case law that dictates the analysis that this Court should conduct in assessing whether there is coverage for the County's settlement. Because it cannot be disputed that the claims against the County, if successful, would be covered under the Carriers' insurance policies, the sole issues in this case are whether the settlement entered into by the County is fair and reasonable, the settlement was made in reasonable anticipation of a finding of liability, and that the County's actions were those of a reasonable uninsured, in accordance with the standards set forth in the *Guillen* case and its progeny. The Carriers' Motions do not address this standard, and for this reason alone, the Carriers' Motion should be denied.

Moreover, even if this Court were to dig deeper into the question of whether the County has a legal duty to indemnify ASAs, the Carriers' assertion that the Seventh Circuit and other courts have reached a clear conclusion that no such duty exists is incorrect. There is no outcome-determinative authority on this point of law, and the County's obligation to indemnify ASAs is strongly suggested by existing case law.

A.   **The Arguments Raised By The Carriers That The County Would Have Prevailed On The Claims Brought By The Englewood Four Is Irrelevant To The Coverage Issues Raised In This Case.**

It is black letter law that when an insured settles a covered claim, it need not establish that it would have lost in the underlying lawsuit for which it seeks coverage. Rather, "[i]f an insured settles an underlying claim prior to verdict, it must show that it settled an otherwise covered loss in 'reasonable anticipation of liability.'" *Federal Ins. Co. v. Binney & Smith, Inc.*, 393 Ill. App. 3d 277, 282 (1st. Dist. 2009) (internal quotations omitted) (hereinafter, "B&S"). As the Illinois Appellate Court explained in another case:

> insured need not establish actual liability to the party with whom it has settled so long as a potential liability on the facts known to the [insured is] shown to exist, culminating in an amount reasonable in view of the size of possible recovery and degree of probability of claimant's success against the [insured].

*U.S. Gypsum Co. v. Admiral Ins. Co.*, 268 Ill. App. 3d 598, 625-26 (1st Dist. 1994) (quoting *Luria Brothers & Co. v. Alliance Assurance Co.*, 780 F.2d 1082, 1091 (2nd Cir. 1986)). Contrary to this case law, the Carriers ask this Court to rule on the merits of the Englewood Four lawsuits by arguing that the County would have prevailed on its defenses in those underlying lawsuits. Accordingly, while the case law holds that the "insured need not establish actual liability to the party with whom it settled," the Carriers ask this Court to rule that the County has no coverage under the Policies by establishing that the County did not have actual liability to the Englewood Four. *Id.* at 625. The Carriers' argument is completely foreclosed by this case law.

The *B&S* case is instructive. There, the defendant, Binney & Smith, Inc. ("Binney"), entered into a settlement in a class action lawsuit that raised claims of asbestos exposure from its crayons. *B&S*, 393 Ill. App. 3d at 279-80. In the insurance coverage action brought by Binney, the trial court concluded that because the defendant had settled an otherwise covered loss in reasonable anticipation of liability, FIC was required to indemnify Binney for the settlement. On

appeal, FIC argued that "Binney could not have reasonably anticipated liability because Binney's compliance with federal law created an absolute defense to the Consumer Fraud Act and Uniform Deceptive Trade Practices Act claims." The appellate court rejected FIC's arguments, holding that:

> Binney was not required to prove it was actually liable in the Schwab action in order to justify the settlement, as Federal's contentions seem to suggest. Binney only was required to show potential liability on the facts known to the [insured is] shown to exist, culminating in an amount reasonable in view of the size of possible recovery and degree of probability of claimants success against the insured.

Accordingly, the *B&S* court concluded that it did not have to conclusively determine liability against Binney for there to be coverage. *Id.* at 288.

The instant case is in the same posture as *B&S*. Like Binney, the County faced claims of liability against it, but rather than risk pursuing its defenses at trial, the County reached a settlement. On those facts, the *B&S* court was clear that Binney did not have to prove it would have lost its case, but only that there was "potential liability." The same is true for the County. And for that reason, this Court should not entertain the Carriers' arguments that the County would have prevailed on its defenses.

*ComEd* provides further support. In that case, ComEd settled a wrongful death claim for $1.5 million arising out of electrocution from a downed power line. *ComEd*, 323 Ill. App. 3d at 972. One of the issues in the underlying lawsuit was allocation of responsibility between ComEd and other responsible parties. *Id.* at 977. That allocation never occurred in the trial court because ComEd settled the case before trial. *Id.* As a result, ComEd's insurer refused to indemnify ComEd for the loss, arguing that the failure to allocate loss invalidated coverage. *Id.* The Court in *ComEd* disagreed, holding that ComEd's settlement of a covered claim was in "reasonable anticipation that it would have been found at least partially liable," and it was thus

-7-

covered under its insurance policies. *Id.* at 982-83. Moreover, the ComEd Court noted that strong policy reasons weighed against "requiring an insured, such as Edison, to establish actual liability in order to receive indemnification." *Id.* at 983.

Again, the instant case is on all fours with the *ComEd* case, which illustrates that when a court is considering whether there should be insurance coverage for a settlement of a covered claim, an actual finding of liability is not required. Rather, courts confronted with such settlements need only determine whether there is a "reasonable anticipation of liability."

In the end, as the above-referenced cases illustrate, the issue that will determine whether the County's settlement of the Englewood Four cases will be covered under the Carriers' Policies is not whether the County did or did not owe indemnification obligations to the ASAs on the facts of the underlying cases. Instead, the issue before this Court is whether the County faced *a reasonable apprehension that it could have such indemnification obligations*.

### B. There Can Be No Dispute That The County's Legal Liability For Malicious Prosecution Is A Covered Claim Under The Policies.

As set forth above, for there to be insurance coverage for the County's settlement of the Englewood Four cases, the County is only required to show that it had a reasonable apprehension that it could be found liable on the claims against it, and that the amount that it paid in settlement was reasonable, taking into consideration its risk of loss and the potential size of a judgment. But as the case law also makes clear, the first and threshold question raised in such a matter is whether the indemnification claims brought by the Englewood Four against the County are covered under the Carrier's insurance policies, *i.e.*, if the Englewood Four had obtained a judgment against the ASAs and then prevailed on its indemnification claims against the County, would the County have insurance coverage for that judgment. Seventh Circuit case law

interpreting virtually identical insurance policy language in a similar context makes it clear that there is such coverage.

The specific grant of coverage set forth in the Policies makes clear that they are intended to cover liability arising out of claims of malicious prosecution. Specifically, the Policies contain the following coverage grant:

A.      For purposes of this endorsement, Paragraph 2. **ERRORS AND OMISSIONS LIABILITY** of Section I. COVERAGES **is replaced with the following**:

     2.      We will pay on your behalf those sums in excess of the retained limit that the insured becomes legally obligated to pay as damages to compensate others for loss arising out of your **wrongful acts** or **personal injury liability** to which this insurance applies and that takes place during the Policy Period and does not include any claims or suits arising out of your **wrongful acts** or **personal injury liability** known or reported by you or anyone authorized by you to give or receive notice of claims or suits prior to the inception of the policy

* * *

D.      For purposes of this endorsement, the following is added to section SECTION [sic] IV. DEFINITIONS:

**Personal injury liability** means:

     1.      False arrest, detention or imprisonment, malicious prosecution or concurrent and directly related assault and battery committed concurrently to such offenses provided:

         (a)      The criminal or civil charges forming the basis for the false arrest, detention or imprisonment, malicious prosecution or concurrent directly related assault and battery claim or suit are dismissed during the Policy Period; or

         (b)      The conviction of the claimant based on the false arrest, detention or imprisonment, malicious prosecution or concurrent directly related assault and battery is voided during the Policy Period; or

-9-

(c)     In the event no criminal or civil charges are filed, the claimant arrested, detained or imprisoned is released from custody during the Policy Period; and

(d)     Prior to the inception this Policy, no agent, servant, or employee of Risk Management department or anyone authorized by you to give or receive notice of claims or suits knew or could have reasonably foreseen that any actual or alleged false arrest, detention or imprisonment malicious prosecution or concurrent directly related assault and battery might be expected to result in a claim or suit.

This endorsement applies to all claims or suits arising solely out of **personal injury liability**, regardless of the legal theory or cause of action alleged, including, but not limited to, common law torts, violations of statutes, and violations of civil or constitutional rights. It is understood that this Policy provides no coverage for any claims or suits arising out of **personal injury liability** offenses of false arrest, detention and imprisonment, malicious prosecution or concurrent directly related assault and battery other than provided by this endorsement.

In *Nat'l Cas. Co. v. White Mountains Reinsurance Co. of Am.*, 735 F.3d 549 (7th Cir. 2013) (hereinafter, "*White Mountains*"), the Seventh Circuit held that Edgar County, Illinois was covered under an insurance policy virtually identical to the Starr and AXIS Policies and under similar circumstances. *See White Mountains*, 735 F.3d at 551. In *White Mountains*, two men who had been wrongfully convicted of murder filed lawsuits against the city of Paris, Illinois, Edgar County, several Illinois State Police officers, two city police officials, and the former state's attorney who had been responsible for the prosecutions. *Id.* After those matters were settled, there were a series of lawsuits between Edgar County and two of its insurance carriers through which Edgar County sought insurance coverage for its obligation to indemnify the state's attorney. *Id.*

The policy language considered by the court in *White Mountains* was strikingly similar to the language of the Starr and AXIS Policies. It required the insurer to "pay on behalf of the Insured **all sums which the Insured shall become legally obligated to pay** as civil damages

-10-

because of wrongful acts arising out of Law Enforcement Activities." *Id.* at 556-59 (emphasis supplied).

The Seventh Circuit explained that the county was legally obligated to pay civil damages arising out of covered wrongful conduct, and thus it was "clearly insured" under the policy. *Id.* at 559.

Likewise, here, the Starr and AXIS Policies clearly cover Cook County for "those sums in excess of the retained limit that the insured becomes legally obligated to pay . . . arising out of . . . personal injury liability." There is no question that if a judgment had been entered against the ASAs, and this Court had entered a judgment against the County based on the County's duty to indemnify, the County would have been "legally obligated to pay" the Englewood Four's damages attributable to the ASAs. Accordingly, pursuant to the plain language of the Starr and AXIS Policies, and the *White Mountains* decision, it is clear that the indemnification claims brought by the Englewood Four plaintiffs against the County are covered under the Policies.

C. **The County Faced A Substantial Risk That The Court Would Conclude That It Was Legally Required To Indemnify The ASAs For Any Judgment Entered Against Them.**

The Carriers' assertion that governing case law is clear that the County has no legal duty to indemnify its ASAs for individual capacity claims is simply incorrect. To reach that conclusion, the Carriers have to ignore contrary case law and elevate case law that considers only whether the County is an indispensable party to litigation, instead of whether the County is a potentially responsible party. A review of applicable legal authority makes it clear that the County's duty to indemnify the ASAs should have been a very real concern for the County. Indeed, the Carriers' lengthy, nuanced, and at times tortured navigation through existing case law to argue that the County has no duty to indemnify ASAs only serves to demonstrate the uncertainty that the County faced in litigating the Englewood Four cases.

The seminal case is *Carver v. Sheriff of LaSalle County*, a series of three reported decisions concerning a county's duty to fund a settlement entered into by a sheriff. The *Carver* cases involved a lawsuit against the sheriff of LaSalle County by two employees alleging sexual discrimination and other claims under Section 1983 and Title VII. *Carver v. Sheriff of LaSalle Cty.*, 243 F.3d 379 (7th Cir. 2001) ("*Carver I*"). The plaintiffs also named LaSalle County because the sheriff depended on the county board for its funding. *Carver I*, 243 F.3d at 381. The county was dismissed on the grounds that it could not control, and therefore was not liable for, the sheriff's actions. *Id.* The sheriff then settled the case. Following efforts to enforce the judgment against LaSalle County because the sheriff's office did not have available funds or the power to tax to raise funds to pay for the settlement, the Seventh Circuit certified the following question to the Illinois Supreme Court: "[W]hether, and if so when, Illinois law requires counties to pay judgments entered against a sheriff's office in an official capacity. If [the Supreme Court] believes that the answer depends on whether the case was settled as opposed to litigated, we would welcome treatment of that distinction as well." *Id.* at 386.

In *Carver v. Sheriff of LaSalle County*, 203 Ill. 2d 497, 510-11 (2003) ("*Carver II*"), the Illinois Supreme Court answered that certified question. The Supreme Court analyzed Section 9-102 of the Illinois Tort Immunity Act, which provides:

> Sec. 9-102. A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article. All other provisions of this Article, including but not limited to the payment of judgments and settlements in installments, the issuance of bonds, the maintenance of rates and charges, and the levy of taxes shall be equally applicable to judgments or settlements relating to both a local public entity or an employee and those undertakings assumed by a local public entity in intergovernmental joint self-insurance contracts. A local public entity may make payments to settle or compromise a claim or action which has been or might be filed or instituted against it when the governing body or person vested by law or ordinance with

authority to make over-all policy decisions for such entity considers it advisable to enter into such a settlement or compromise.

745 ILCS 10/9-102.

The Supreme Court rejected the county's argument that under § 9-102, only the county board had the authority to settle a claim and to appropriate funds to pay for a judgment. *Carver II*, 203 Ill. 2d at 508-11. The Supreme Court stated that a county sheriff is a "local public entity" for purposes of § 9-102, and therefore had the authority both to enter into and pay for a settlement. *Id.* at 511-515. The sheriff was thus liable for paying the judgment.

The Supreme Court held that in order to give effect to the intent of the General Assembly in setting out a statutory scheme that creates a sheriff as an independently elected officer but finances the sheriff's office through county funds appropriated by the county board, the sheriff's power to pay a judgment under § 9-102 requires the county to finance the payment. *Id*. at 516. The Supreme Court stated that any other conclusion would leave a meritorious plaintiff with a "completely hollow victory." *Id.* The Supreme Court reiterated the Seventh Circuit's concern that "*such a victory would resemble a 'huckster's shell game*, so that no matter which entity the plaintiff sues, the state (or its subdivisions) always may reply that someone else is responsible— and that power has been divided in such a fashion that the responsible person can't pay, and the entity that can pay isn't responsible for doing so.'" *Id.* at 517 (quoting *Carver I*, 243 F.3d at 386) (emphasis added). Therefore, the Supreme Court concluded that the county must pay any judgment entered against a sheriff in his official capacity, and that "[b]ecause the office of the Sheriff is funded by the county, the county is therefore required to pay a judgment entered against a sheriff's office in an official capacity. We further hold that this conclusion is not affected by whether the case was settled or litigated." *Id.* at 499.

After receiving the answer to the certified question, the Seventh Circuit held that the Supreme Court's resolution meant that a county is a necessary party in such cases, stating: "a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity."  *Carver v. Sheriff of LaSalle Cty.*, 324 F.3d 947, 948 (7th Cir. 2003) ("*Carver III*") (citing Fed. R. Civ. P. 17, 19).  The Seventh Circuit held that:  "[b]ecause state law requires the county to pay, federal law deems it an indispensable party to the litigation."  *Id.*

Subsequently, in *Robinson v. Sappington*, 351 F.3d 338 (7th Cir. 2003), a secretary for a Macon County Circuit Court judge sued that judge in his individual and official capacities for sexual harassment, as well as the presiding judge in his official capacity.  Just as LaSalle County was a necessary party because it funded the Sheriff's Office in the *Carver* cases, the Seventh Circuit held that Macon County was a necessary party based on its responsibility for funding the Macon County Circuit Court, stating:

> The responsibility for maintaining and funding the Macon County Circuit Court lies with Macon County.  Under Illinois law, it is responsible for the payment of expenses and judgments emanating from the workings of that court.  The fact that some of the parties are state officials, as opposed to employees of Macon County, does not alter that fiscal responsibility.

*Robinson*, 351 F.3d at 339.  The Seventh Circuit applied *Carver* to the role of a Circuit Court judge, as opposed to a sheriff.

In *Patterson v. Burge*, 328 F. Supp. 2d 878, 882-83 (N.D. Ill. 2004), a federal district court extended the *Robinson* decision to indemnification claims brought against the County based on malicious prosecution claims against ASAs.  In *Patterson*, the plaintiff  brought a wrongful conviction suit against several Chicago Police Department ("CPD") detectives and other individuals involved with the CPD, as well as two Cook County ASAs, State's Attorney Richard Devine, the City of Chicago, Cook County, and the Cook County State's Attorneys'

Office. The City, Cook County, and the Cook County State's Attorneys' office moved to dismiss the plaintiff's *respondeat superior* and indemnification claims, arguing that they could not be held liable as employers where none of Patterson's allegations stated a colorable claim under state law against any of the individual defendants. *Id.* at 903. The court found that because the plaintiff stated colorable claims for malicious prosecution, intentional infliction of emotional distress, and conspiracy, "defendants City of Chicago and Cook County State's Attorney's Office, as employers of the individual defendants, may be held liable for actions committed by their employees in the scope of employment." *Id.* The court went on to explain:

> Defendant Cook County, though not an employer of any individual defendant for purposes of *respondeat superior* liability . . . nevertheless may be required to pay judgments entered against county officials in their official capacities. *See Robinson v. Sappington*, 351 F.3d 317, 339 (7th Cir. 2003); *Pucinski v. Cook County*, 192 Ill.2d 540, 249 Ill. Dec. 835, 737 N.E.2d 225, 228 (2000). Thus, the *respondeat superior* claim in Count XII is dismissed as to defendant Cook County, but remains as to the City of Chicago and the Cook County State's Attorney's Office. . . . and since all three defendants may be required to pay damages on behalf of their employees under Illinois law, defendants' motion to dismiss [the indemnity claim under 745 ILCS 10/9-102] is denied in its entirety.

*Id.*

In *Cannon v. Burge*, No. 05 C 2192, 2006 WL 273544, at *3 (N.D. Ill. Feb. 2, 2006), the federal court again found that the County could be liable for indemnification based on claims brought against ASAs. In *Cannon*, the plaintiff alleged that various detectives coerced his confession through use of torture, implicating the plaintiff as an accomplice to a homicide. The plaintiff also asserted seven claims against Richard Devine, who had served as counsel to the City of Chicago and had represented Detective John Burge from 1988 to 1996 and became the Cook County State's Attorney in 1997, in his **individual** capacity, alleging that Devine made false public statements, discredited evidence of torture, refused to investigate allegations of torture, and suppressed evidence of torture *Id.* at *2, 16. The plaintiff thus asserted a claim for

indemnification under § 9-102 against Cook County and against the Cook County State's Attorney's office. *Id*.

The County argued that it was not liable for indemnification because Devine was an employee of the State, not the County. *Id*. at *21. The Court held that was not dispositive, stating:

> [A]s the County Defendants concede, "under the Seventh Circuit's decision in *Robinson v. Sappington*, 351 F.3d 317 (7th Cir. 2003), the County has a duty to indemnify claims brought against State officials where the County funds the office of that State official" and "the County funds the [State's Attorney's office]". . . . *Robinson* relied on the Illinois Supreme Court's decision in *Carver v. Sheriff of La Salle County*, 203 Ill.2d 497, 787 N.E.2d 127, 272 Ill. Dec. 312 (Ill. 2003), which, in answering a question the Seventh Circuit certified, held that "[b]ecause the office of the sheriff is funded by the county, the county is therefore required to pay a judgment entered against a sheriff's office in an official capacity." *Carver*, 203 Ill.2d at 522, 787 N.E.2d at 141, 272 Ill. Dec. at 326.

*Id*. The court also relied on *Wallace v. Masterson* as follows:

> Furthermore, in *Wallace v. Masterson*, 345 F. Supp. 2d 917 (N.D. Ill. 2004), the court found that "the *Carver* cases mandate that the County must pay for a tort judgement [sic] entered against Masterson [a Cook County Sheriff's Deputy Officer sued in his personal capacity] for which the Sheriff is directed to pay by § 9-102 or is found vicariously liable under the doctrine of *respondeat superior*." 345 F. Supp. 2d at 925. Therefore, finding that Devine was not an employee of the County does not automatically release the County from liability for indemnification.

*Id*. Judge St. Eve further stated in a footnote: "The Court notes that it does not hold as a matter of law that the County is liable for indemnification. Instead, the Court holds only that based on the arguments before it, dismissing this cause of action as to the County at this stage is inappropriate." *Id*. at *22, n.18.

In *Armour v. Country Club Hills*, No. 11 C 5029, 2012 WL 4499050 (N.D. Ill. Sept. 27, 2012), Judge Gottschall specifically addressed the potential responsibility of Cook County for the actions of ASAs in a malicious prosecution case. In *Armour*, Cook County was named as a defendant in a case asserting claims against the City of Country Club Hills, several police

officers, and a Cook County ASA in connection with the wrongful prosecution for attempted murder of one of those police officers. *Id.* at *1. The District Court dismissed the claim against the County "insofar as it seeks to hold Cook County substantively liable" for a judgment against the ASA. However, the District Court explained that Cook County was nevertheless a necessary party to the action because it could have a duty to indemnify the assistant state's attorney pursuant to Section 9-102 of the Tort Immunity Act. *Id.* at *8. Judge Gottschall based her ruling on *Robinson* and *Carver II*, stating:

> ASA Manster and Cook County acknowledge, however, that Cook County may be a necessary party to the action under *Robinson v. Sappington,* which states that a county may be required to pay a judgment entered against an independently-elected officer who is paid by the county. 351 F.3d 317, 338-39 (7th Cir. 2003); *see also Carver v. Sheriff of LaSalle Cty.,* 203 Ill.2d 497, 272 Ill. Dec. 312, 787 N.E.2d 127, 141 (Ill. 2003) ("Because the office of the sheriff is funded by the county, the county is therefore required to pay a judgment entered against a sheriff's office in an official capacity"). Following *Robinson* and *Carver*, Cook County may have a duty to indemnify ASA Manster and shall remain in this action solely as a necessary party for as long as ASA Manster remains a defendant.

*Id.* at *68.

Just last year, in *McCullough v. Hanley*, No. 17 C 50116, 2018 WL 3496093, at *18 (N.D. Ill. July 20, 2018), the District Court stated:

> Lastly, the prosecutor defendants [the former DeKalb County State's Attorney and three former DeKalb County Assistant State's Attorneys] contend that the indemnification claim against DeKalb County alleged in Count XI should be dismissed because they are State employees and not employees of DeKalb County. This contention is without merit because the County has a duty to indemnify State officials, like State's Attorneys, because the County funds the office of that official. *Robinson v. Sappington*, 351 F.3d 317, 339 (7th Cir. 2003) ("The fact that some of the parties involved are state officials, as opposed to employees of the [County], does not alter that fiscal responsibility."); *see also Cannon v. Burge*, No. 05 C 2192, 2006 WL 273544, at *21 (N.D. Ill. Feb. 2, 2006) ("[T]hat [the State's Attorney] was not an employee of the County does not automatically release the County from liability for indemnification."). Therefore, the court denies the prosecutor defendants' motion to dismiss count XI.

-17-

Indeed, based on *Armour*, *McCullough* and the other cases cited in that recent opinion, it would have been irresponsible for the County to ignore the substantial risk that it would be required to pay whatever judgment the Englewood Four obtained against the ASAs.

      **D.**    **Contrary To The Carriers' Arguments, The Cases On Which The Carriers Rely Do Not Stand For The Proposition That The County Has No Legal Obligation To Indemnify ASAs.**

Notwithstanding the weight of the authority cited above, Starr states as though it were axiomatic that the County "is not liable for the alleged actions of any Assistant State's Attorney." (Starr Mem. at 8.)  It cites two decisions in support, but neither supports Starr conclusion.  The first, *Houston v. Cook Cty*., 758 F. Supp. 1225 (N.D. Ill. 1990), holds that a county cannot be sued for vicarious liability under § 1983 for the actions of an assistant state's attorney.  While that may be true, it is irrelevant here, where the issue is not whether the County is vicariously liable for the ASAs' conduct, but whether the County has a duty to indemnify the ASAs.  Second, Starr cites *Biggerstaff v. Moran*, 671 N.E.2d 781, 784 (Ill. App. Ct. 1996).  But that case only adds that assistant state's attorneys are technically not "county employees."  As explained above, that issue is also irrelevant here; even though state's attorneys are not "county employees," numerous cases still require counties to indemnify them.

Both Carriers argue at great length that the ASAs were sued in their "individual," rather than "official" capacities.  (Starr Mem. at 8-12; AXIS Mem. at 2-14.)  They then cite a string of cases, arguing that due to this distinction, case law provides that the County has no duty to indemnify the ASAs.  However, the cases that the Carriers cite do not hold that a County has no duty to indemnify its assistant state's attorneys.  In fact, to the contrary, the cases recognize that a county may very well have to indemnify an assistant state's attorney pursuant to Section 9-102, which is precisely the conclusion the County reached in the Englewood Four cases, leading to its decision to settle them.

The Carriers rely heavily on *Askew v. Sheriff of Cook Cty.*, 568 F.3d 632 (7th Cir. 2009). Starr goes so far as to proclaim that it stands for the proposition that "Cook County is not required to indemnify any ASA sued in an individual capacity." (Starr at 9.) However, *Askew* does not hold as the Carriers suggest.

In *Askew*, the plaintiff sued a sheriff's deputy in his personal capacity, but did not sue the county. The defendants moved to dismiss the complaint for failure to join an indispensable party – the county – in violation of Rule 19. The Seventh Circuit held that since the lawsuit was against the deputy in his individual capacity, "[a]ny judgment entered would be against [the deputy] alone, *without regard to any collateral sources to which [the deputy] might turn to fund that judgment*." *Askew*, 586 F.3d at 637 (emphasis supplied). As a result, the failure to name the county as a defendant did not violate Rule 19, because the county was not "indispensable," and dismissal on that basis was improper. *Id*. Critically, however, the court did not make any decision about whether the County could have a duty to indemnify the deputy because such a determination would be "premature." *Id*. The court acknowledged that, if a judgment were entered against the deputy in his individual capacity, the county may ultimately have to indemnify that loss. *Id*. The court compared the county to the role of an insurer, stating that the county did not need to be named "any more than an insurance company must be included as a defendant in a suit against its insured." *Id*. In other words, *Askew* stands for the proposition that in a lawsuit against a sheriff's deputy, the county does not have to be named as a defendant, but it does not speak to the question of whether the County could be named as a defendant.

The same is true for *Mathlock as next friend of J.R. v. Fleming*, No. 18 CV 6406, 2019 WL 2866726 (N.D. Ill. July 3, 2019), another case relied upon by Starr. (Starr Mem. at 11.) Citing *Askew*, the court in *Mathlock* stated: "The county is not, however, a necessary party for

individual-capacity claims against the sheriff." *Mathlock*, 2019 WL 2866726, at *6. *Askew* and related cases do not say that a county does not have to indemnify a sheriff's deputy sued in an individual capacity, or even that a county cannot be named in such a lawsuit as a potential indemnitor; they merely hold that a county is not *required* to be named.

If anything, *Askew* supports the County's position, as subsequent cases show. *Tillman v. Burge*, 813 F. Supp. 2d 946 (N.D. Ill. 2011) is factually similar to the Englewood Four cases: after serving over 20 years in prison for a rape and murder that he did not commit, the plaintiff sued a number of defendants, including police officers and an assistant state's attorney, all in their individual capacities. *Id*. at 954. The plaintiff also sued the City of Chicago and Cook County for indemnification. Citing *Askew*, Judge Pallmeyer denied a motion filed by Cook County to dismiss the indemnification claim brought against it: "Count XII adequately alleges a claim for indemnification under 745 ILCS 10/9-102 against the City of Chicago and against Cook County, contingent upon success of the claims brought against state and local employees acting within the scope of their employment." *Id*. at 981.[2] As a result, the court held that the County was properly in the lawsuit as a potential indemnitor.

In *Hobbs v. Cappelluti*, 899 F. Supp. 2d 738 (N.D. Ill. 2012), a plaintiff exonerated after five years of detention sued, among other defendants, assistant state's attorneys in their individual capacities. The plaintiff also sued Lake County for indemnification. In ruling on a motion to dismiss, Judge Lefkow declined to dismiss the indemnification claim because some of the claims against the assistant state's attorneys survived the motion to dismiss, and as a result, Lake County was still involved as a potential indemnitor. *Id*. at 771, n.22.

---

[2] *Tillman* also shows that Starr's statement that "In cases where Assistant State's Attorneys have been named as defendants no court, when faced with a motion contesting whether a county has an obligation to indemnify an ASA sued in an individual capacity, has expressly held that the county has such an indemnity obligation" (Starr Mem. at 16) is incorrect.

In *McCullough*, another case involving claims against an assistant state's attorney, the court denied a county's request to dismiss the indemnification claims brought against it. *McCullough* directly addressed and rejected the argument that a county does not have to indemnify assistant state's attorneys: "This contention is without merit because the County has a duty to indemnify State officials, like State's Attorneys, because the County funds the office of that official." *McCullough* , 2018 WL 3496093, at *18. Starr tries to downplay the applicability of *McCullough* by pointing out that it does not cite *Askew*. (Starr Mem. at 16.) Yet there was no need for *McCullough* to cite *Askew*, as Rule 19 was not at issue.

Similarly, just last year, Judge Leinenweber denied a motion to dismiss an indemnification claim brought against Lake County and its sheriff's office for the actions of sheriff's deputies. *Holmes v. Curran*, No. 17 C 3031, 2018 WL 2933648 (N.D. Ill. June 12, 2018). In *Holmes*, the defendants cited *Askew* and *Carver II*, but Judge Leinenweber found that "the relevant takeaway from those cases is that Illinois statutes compel counties to indemnify" the deputies in these lawsuits. *Id*. at *4. As a result, the court held that Lake County was properly in the lawsuit due to the possibility it would have to ultimately indemnify the sheriff's deputies.

Starr preemptively cites *Armour*, 2012 WL 4499050, trying to distinguish that case on the basis that it is a purported example of a county that "has conceded the point" that it may have to indemnify its assistant state's attorneys. (Starr Mem. at 16.) What Starr characterizes as a concession was no more than an acknowledgment by the County that there is authority for the proposition that it may have to indemnify its assistant state's attorneys. *Armour*, 2012 WL 4499050, at *8. And the court in *Armour* agreed: "Following Robinson and Carver, Cook County may have a duty to indemnify ASA Manaster and shall remain in this action solely as a

necessary party for as long as ASA Manaster remains a defendant." *Id*. *Armour* is yet another decision that the Carriers expected the County to simply ignore when assessing its exposure in the Englewood Four cases.

Starr also cites to *Simms v. Cty. of Bureau*, 506 F.3d 509 (7th Cir. 2007), asserting it "reached the same conclusion" as *Askew* that a county need not indemnify sheriff's deputies. (Starr Mem. at 11.) *Simms* reached no such conclusion. In *Simms*, the claims were against a sheriff, not a sheriff's deputy. The only thing the court said on this issue was that it agreed "that Bureau County would have been a necessary party to the case if the complaint had stated a claim against the Sheriff in his official capacity." *Simms*, 506 F.3d at 517. With no pending claims against the sheriff – the individual capacity claims had been settled, and the official capacity claims were dismissed, *id*. at 516 – the court had no occasion to discuss when and whether the county would have to indemnify the sheriff. *Simms* is completely inapposite to the issue of whether, under Illinois law, an Illinois county must indemnify an assistant state's attorney for judgments entered against him or her.

Starr misinterprets *Klingler v. City of Chicago*, No. 15-CV-1609, 2017 WL 4742192 (N.D. Ill. Oct. 20, 2017). (Starr Mem. at 11, n.6.) Notably, in *Klingler*, the court expressly recognized that "Plaintiff is correct to include Will County in this lawsuit" for indemnification purposes. *Klingler*, 2017 WL 4742192, at *2. The issue that the *Klingler* court had was that, in its view, there was a missing step in the plaintiff's complaint – that the plaintiff had to sue the sheriff's office for *respondeat superior* liability based on the actions of its deputies, and then sue the county for indemnification. *Id*. at *3.[3] Indeed, the court *sua sponte* ordered the complaint be

---

[3] Note that there is no possible equivalent "missing step" in the case of a lawsuit against an assistant state's attorney, as a state's attorney's office is "a state office that is immune from suit." *Tillman*, 813 F. Supp. 2d at 981-82 (dismissing claims against State's Attorney's office, but not

amended to reflect this procedural posture. *Id.* at \*4. ("Therefore, the Court *sua sponte* orders that the Second Amended Complaint be amended to add the Sheriff's Office as a defendant in Counts V, VI, and VII. Further, the Second Amended Complaint is amended to reflect that the indemnity claim against Will County applies to the claims against the Sheriff's Office in Counts V, VI, and VII.") Ultimately, there was no duty to indemnify because the court found that the sheriff's deputy was not acting within the scope of his employment when the defendant arrived at a McDonald's on a party bus as part of a birthday celebration dressed in a kilt and with bagpipes, not a police officer's uniform, did not have his Will County Deputy Sheriff's badge or gun, and did not identify himself as a police officer when he attempted to, as he said, "keep the peace." *Id.* at \*5-7. Plainly, based on these undisputed facts, there was no requirement for Will County to indemnify that deputy for damages stemming from the event in question, as his actions had nothing to do with his status as a sheriff's deputy. Equally apparent is that *Klingler* is irrelevant to this coverage action.

Starr states that *Stone v. Pepmeyer*, 2011 WL 1627076 \*3 (C.D. Ill. Apr. 28, 2011), found that *Askew* "'clearly holds' that a county is not a necessary party in an individual capacity case because it is not obligated to indemnify an individual sued in an individual capacity." (Starr Resp. at 11 n.6.) *Stone* made no such finding. Instead, it merely observed that *Askew* "clearly holds that a county need not be joined under Rule 19 in an individual capacity case, *even if the county might eventually be liable for the judgment.*" *Stone*, 2011 WL 1627076, at \*3 (emphasis supplied). So while *Stone* supports the argument that federal procedure does not require the

---

indemnification claim against county for actions of assistant state's attorney). *See also Roldan v. Town of Cicero*, No. 17-CV-3707, 2018 WL 1469011, at \*6 (N.D. Ill. Mar. 26, 2018) (J. Dow) ("Thus, Plaintiff's request to amend the complaint to add a *Monell* claim against the Cook County State's Attorney's Office and Anita Alvarez in her official capacity is denied, as such an amendment would be futile.")

plaintiff to join a county in a lawsuit against its employees in their individual capacities, it goes no further. In fact, it explicitly recognizes that the county may indeed have to indemnify such employees.

The Carriers' citation to *Wallace v. Masterson*, 345 F. Supp. 2d 917 (N.D. Ill. 2004), is puzzling. (Starr Mem. at 16, n. 11; AXIS Mem. at 9.) In *Wallace*, the plaintiff sued a sheriff's deputy in his individual capacity, and also sued the sheriff's office and the county for indemnification. The defendants made the same argument the Carriers do here, namely, that a county does not have to indemnify someone sued in his individual capacity. *Wallace* expressly rejected this argument, finding the defendants' "argument[] unavailing and does not dismiss the 9-102 claim against the County." 345 F. Supp. 2d at 923. While it is true that in *Wallace*, the sheriff's office itself was also sued, that is an irrelevant distinction to the ultimate issue of whether the county would have to indemnify a sheriff's deputy for a claim against him in his individual capacity. The court held that it would, and refused to dismiss the indemnity claim as a result.

Finally, AXIS argues that the County should have disregarded legal precedent that it has a duty to indemnify the ASAs as being no more than cases that were "erroneously decided." (AXIS Mem. at 11, 13.) It is not the law that when weighing a decision to settle, a party must assume that certain precedent – like *Cannon*, 2006 WL 273544 – was "wrongly decided." In addition, there was nothing "wrongly decided" by Judge St. Even in *Cannon*. She correctly recognized that Cook County may have to indemnify the State's Attorney, even though he was not a County employee. *Id*. at *21-22. Even though *Cannon* predates *Askew*, as explained above the latter case does not change this analysis. Thus, AXIS' contention that *Cannon* is "no longer good law" in light of *Askew* (AXIS Mem. at 13) fails. Finally, AXIS argues that *Cannon* "erred"

in its application of the law, because the State's Attorney's Office was "not directed to pay a judgment" in *Cannon*. (*Id.* at 14.) But as *Cannon* explicitly states, "the Eleventh Amendment bars Plaintiff's claims against the Cook County State's Attorney's Office[.]" *Cannon*, 2006 WL 273544 at *21. AXIS' attempt to show *Cannon* was an "erroneous" decision fails.

### E. The Carrier's Remaining Arguments Are Irrelevant

Both Starr and AXIS include in their briefs additional miscellaneous arguments. AXIS claims the settlements are "voluntary payments" for which there is no coverage. Starr argues that (1) the ASAs should have turned to the State of Illinois for indemnification, thereby absolving the County of any obligation, and (2) to require a county to indemnify its assistant state's attorneys would "abrogate" the law on respondeat superior. None of these arguments have any merit, and they are irrelevant to the central issue in this case.

#### 1. AXIS May Not Rely On The Carriers' Refusal To Participate In Settlement To Avoid Liability

AXIS argues that the County made a "voluntary payment" when it settled the Englewood Four lawsuits and therefore breached the AXIS Policy. (AXIS Mem. at 2.) This argument fails for three reasons. First, the County's payment was not "voluntary" when considered in the proper context. When settling a claim in the face of a "reasonable anticipation of personal liability" – as the County did here – an insured is not acting as a "mere volunteer." *Flodine v. State Farm Ins. Co.*, No. 99 C 7466, 2003 WL 1394977, at *9 (N.D. Ill. Mar. 19, 2003). Instead, it is acting as a prudent person would to reduce liability.

Second, there is a conflict between AXIS and the County. AXIS is seeking a declaration that there is no coverage. (*See* Docket No. 93.) An insurer cannot refuse to provide any coverage and seek a declaration that its policy is not triggered on the one hand, but then insist that its insured refuse to settle the underlying case without the insurer's consent – which it

refuses to provide – on the other.  The law precludes such a Catch-22 scenario.  *See, e.g.*, *Cent. Mut. Ins. Co. v. Tracy's Treasures, Inc.*, 2014 IL App (1st) 123339, ¶ 46 (when there is a conflict between an insurer and insured, insured's decision to settle "does not contravene the policy provision prohibiting an insured from voluntarily assuming an obligation"); *ComEd*, 323 Ill. App. 3d at 985 (same).

Third, the settlements were reached with AXIS being fully aware of the lawsuits, and after AXIS was invited to participate in settlement negotiations.  This is yet another reason AXIS' argument fails.  *See, e.g.*, *Pekin Ins. Co. v. XData Sols., Inc.*, 2011 IL App (1st) 102769, ¶ 31 ("Since the settlement agreement was entered into subsequent to tendering defense of the action to Pekin, XData did not breach the 'voluntary payment' provision.); *Myoda Computer Ctr., Inc. v. Am. Family Mut. Ins. Co.*, 389 Ill. App. 3d 419, 425 (1st Dist. 2009) ("we note that the settlement of the underlying lawsuit took place *after* Myoda tendered the matter to American Family, which would appear not to implicate the voluntary payments clause").

### 2. Starr's Remaining Arguments Concerning Indemnification Are Inapplicable

Starr asserts that any indemnification obligations owed to the ASAs are determined by the State Employee Indemnification Act, 5 ILCS 350/2, and not the Tort Immunity Act.  (Starr Mem. at 12.)  However, the State Employee Indemnification Act imposes no duty to indemnify on the State of Illinois when the allegations are of "intentional, willful, or wanton misconduct[.]" 5 ILCS 350/2.  The Tort Immunity Act has no such limitation.  Intentional and willful misconduct is precisely what the Englewood Four accused the ASAs of, and it is precisely why the State Employee Indemnification Act does not apply here.  *See also McFatridge v. Madigan*, 2013 IL 113676 (noting that the Attorney General refused to indemnify a State's Attorney sued for malicious prosecution and accused of intentional and willful misconduct).

Second, Starr argues that since a county cannot be directly liable for the conduct of an assistant state's attorney acting in his or her individual capacity under a respondeat superior theory, it would "abrogate" this body of law to nonetheless require a county to indemnify such individual capacity claims. (Starr Mem. at 11-12.) This argument conflates two distinct concepts. Respondeat superior liability requires an employer-employee relationship, and this relationship creates the employer's liability for its employee's conduct. As the cases discussed above make clear, indemnification under the Tort Immunity Act does not require nor depend on an employer-employee relationship, and the "official capacity" versus "individual capacity" distinction is irrelevant. The two concepts – respondeat superior liability and indemnification under the Tort Immunity Act – are distinct, and one does not "abrogate" the other.

IV. **CONCLUSION**

The Carriers urge this Court to rule, that in hindsight, the County should not have settled the Englewood Four cases. Rather the County should have predicted that this Court would, in the face of a jury verdict in favor of the Englewood Four plaintiffs, have ruled, as a matter of first impression, that the County had no duty to indemnify the ASAs, and, therefore, that plaintiffs who were incarcerated for 67 years, and proved that they were the victims of wrongful prosecution, were entitled to recovery only from the personal assets of the ASAs, placing them in a position where, for all practical purposes, they have a legal right without a legal remedy. This is precisely the "huckster's shell game" that the Seventh Circuit and the Illinois Supreme Court sought to avoid in the *Carver* cases. Given the exposure the County faced, even if this Court were to rule now, after the fact, that the County has no duty to indemnify ASAs for malicious prosecution, the County's apprehension of liability was reasonable. Regardless, because the Carriers' policies cover the County for legal liability for wrongful prosecution, and because the argument that the County has no duty to indemnify ASAs for wrongful prosecution is a defense

to the County's liability which goes to the reasonableness of the settlements which the Carriers do not address in their Motions, the Carriers' Motions should be denied.

DATED:  October 4, 2019                Respectfully submitted,

                                        COOK COUNTY, ILLINOIS


By:    /s/ Kenneth S. Ulrich        
        One of the Attorneys for Defendant,
        Counter-Plaintiff and Third Party-Plaintiff,
        COOK COUNTY, ILLINOIS

        Kenneth S. Ulrich
        A. Colin Wexler
        GOLDBERG KOHN LTD.
        55 E. Monroe St., Suite 3300
        Chicago, IL 60603
        (312) 201-4000

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that on October 4, 2019, he caused a copy of the foregoing COOK COUNTY'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO STARR INDEMNITY & LIABILITY COMPANY AND AXIS SURPLUS INSURANCE COMPANY'S MOTIONS FOR SUMMARY JUDGMENT to be served via the Court's ECF/electronic mailing system upon all counsel of record.

/s/  Kenneth S. Ulrich