**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

STARR INDEMNITY & LIABILITY
COMPANY,

        Plaintiff,

        v.

COOK COUNTY, ILLINOIS, an Illinois
governmental entity, *et al.*

        Defendants.

_____

COOK COUNTY, ILLINOIS, an Illinois
governmental entity,

        Counter-Plaintiff,

        v.

AXIS SURPLUS INSURANCE
COMPANY and STARR INDEMNITY
& LIABILITY COMPANY

        Counter-Defendants.

_____

AXIS SURPLUS INSURANCE
COMPANY,

        Counter-Plaintiff,

        v.

COOK COUNTY, ILLINOIS, an Illinois
governmental entity, *et al.*

        Counter-Defendants.

Case No. 17-cv-1430

Judge Robert M. Dow, Jr.

## MEMORANDUM OPINION AND ORDER

This case presents an insurance coverage dispute between Cook County ("County") and insurance providers Starr Indemnity and Liability Company ("Starr") and AXIS Surplus Insurance Company ("AXIS") (collectively, "Carriers") resulting from four related malicious prosecution cases. The Carriers moved for summary judgment [177; 178]. For the reasons below, the motions [177; 178] are granted in part and denied in part. They are granted to the extent that they seek declarations that Cook County Assistant State's Attorneys Terence Johnson and Fabio Valentini are not insureds under the insurance policies and that the Carriers are not liable for the $297,463.77 in defense fees and costs the County incurred on behalf of ASA Johnson. The motions [177; 178] are denied in all other respects. Counsel are directed to file a joint status report no later than October 18, 2021 that includes a statement in regard to any settlement discussions and/or any mutual request for a referral to the assigned Magistrate Judge for a settlement conference. The Court will set further case management deadlines following review of the joint status report.

## I.     Background

These facts are taken from the parties' respective Local Rule 56.1 statements and supporting exhibits [123; 127; 134]. Courts are also entitled to consider any material in the record, even if it is not cited by either party. Fed. R. Civ. P. 56(c)(3). In evaluating a motion for summary judgment, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bell v. Taylor*, 827 F.3d 699, 704 (7th Cir. 2016). "When we cite as undisputed a statement of fact that a party has attempted to dispute, it reflects our determination that the evidence cited in the response does not show that the fact is in genuine dispute." *NAR Business Park, LLC v. Ozark Automotive Distributors, LLC*, 430 F. Supp. 3d 443, 446–47 (N.D. Ill.) (quotation marks and citation omitted). That said, the facts in the current record are largely uncontested.

This case is an insurance coverage dispute resulting from four related malicious prosecution cases (the "underlying cases") brought by four individual plaintiffs (the "Englewood Four"), alleging that misconduct by Chicago police officers and Cook County Assistant State's Attorneys ("ASAs") Terence Johnson and Fabio Valentini led to their wrongful convictions.[1] [131, at ¶¶ 6–7]. In 2012, the State of Illinois granted the Englewood Four Certificates of Innocence. [132, at ¶ 22]. The Englewood Four then sued the ASAs in their individual capacities[2] for malicious prosecution, among other claims, and brought indemnification claims against the County. [*Id.*, at ¶¶ 23–25; 123-1, at ¶¶ 19, 186–89; 123-2, at ¶¶ 19, 171–74; 123-3, at ¶¶ 131–34; 123-4, at ¶ 132–35]. The ASAs were not employees of the County.[3] [132, at ¶ 9]; see also *Ingemunson v. Hedges*, 549 N.E.2d 1269, 1271–72 (Ill. 1990) (determining that State's Attorneys are state officials).

At the time the lawsuits were filed, the County had an insurance policy with Starr (the "Starr Policy"). [131, at ¶ 14]. This policy provides a "$10,000,000 limit of liability per

---

[1] The underlying cases are *Richardson v. City of Chicago*, 12-cv-9184, *Saunders v. City of Chicago*, 12-cv-9158, *Thames v. City of Chicago*, 12-cv-9170, *Swift v. City of Chicago*, 12-cv-9155. The *Swift* case was dismissed and refiled in the Circuit Court of Cook County, Illinois as Case No. 2012-L-12995.

[2] In its response to Axis' Rule 56.1 statement, the County disputed the fact that the *Thames* and *Swift* lawsuits asserted individual-capacity claims against the ASAs, explaining that the complaint does not state the capacity in which the ASAs were sued and that any interpretation of those lawsuits as stating individual-capacity claims is a legal conclusion inappropriate for Rule 56.1 statements. [132, at ¶ 23]. However, the County makes no legal argument in its briefing that the ASAs were not sued in their individual capacity, and instead suggests that this distinction is not dispositive. [133, at 18, 32]. Moreover, the underlying cases sought to hold the ASAs liable for their own individual wrongdoing; they did not seek to hold the office Cook County State's Attorney liable. See *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (explaining that "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law" whereas official-capacity suits are "another way of pleading an action against an entity" (second quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978))).

[3] There was discussion at oral argument regarding whether the County or the State pays the ASAs and otherwise funds the Cook County State's Attorney's Office. However, there is nothing in the record regarding these fact questions, and the parties did not cite to any pertinent state laws in their briefing. Thus, to the extent that these fact questions are material, the record is insufficient to grant the Carriers' motions for summary judgment.

3

Occurrence or Wrongful Act." [*Id.*, at ¶ 15]. The Starr Policy also states:

> We will pay on your behalf those sums in excess of the retained limit that the insured becomes legally obligated to pay as damages to compensate others for loss arising out of your wrongful acts or personal injury liability to which this insurance applies and that takes place during the Policy period * * *.

[*Id.*, at ¶ 16]. The policy defines "personal injury liability" to include "malicious prosecution," and it states that it "applies to all claims or suits arising solely out of personal injury liability, regardless of the legal theory or cause of action alleged, including but not limited to * * * violations of civil or constitutional rights." [*Id.*]. The Starr Policy includes the County and its employees as insureds. [*Id.*, at ¶ 17]. At the time the lawsuits were filed, the County had an excess liability policy with AXIS (the "AXIS Policy"). This policy applies (1) "in excess of a self-insured retention of $10 million per 'occurrence' or 'wrongful act'" and (2) "in excess of a first layer excess policy issued by Starr." [132, at ¶¶ 2–3]. The AXIS Policy incorporates the sections of the Starr policy discussed above, and the AXIS Policy also includes the County as an insured. [*Id.*, at ¶¶ 4, 5].

In January 2017, the County notified the Carriers of a settlement offer made by the Englewood Four to resolve all four cases. [141, at ¶ 1]. The County requested that the Carriers participate in settlement negotiations. [138, at ¶ 4; 141, at ¶ 4]. On May 17, 2017, the County settled the claims against Johnson in the *Swift* lawsuit for $5,625,000. [132, at ¶ 33]. On October 5, 2018, the County settled the claims against Johnson and/or Valentini in the remaining three lawsuits for a total of $23,970,000. [*Id.*, at ¶ 34]. The County also "incurred $297,463.77 in defense fees and costs on account of ASA Terrence Johnson." [82, at ¶ 32]. Neither Starr nor AXIS has offered any funds for the settlement of these claims. [138, at ¶ 5; 141, at ¶ 5].

Instead, Starr filed this suit, seeking a declaratory judgment that (1) no Starr Policy coverage is owed to Valentini or Johnson because they are not insureds under the policy; (2) Starr

has no obligation to pay on behalf of the County any sums paid or incurred with respect to any settlement or defense costs in the underlying cases because the County had no legal obligation to pay; (3) that the allegations in the underlying complaints are excluded by the terms of the Starr Policy; and (4) that the allegations in the underlying complaints arise out of the same occurrence. [68, at ¶¶ 26–51]. The County filed a counterclaim for declaratory relief against the Starr and AXIS, asking the Court to find that the (1) the Englewood Four's claims against the County are covered claims under the Starr and AXIS Policies; (2) that the allegations in the underlying complaints arose out of a single wrongful act or single occurrence such that the complaints are subject to a single retention limit; and (3) that the settlements were fair, reasonable, and made in reasonable anticipation of liability. [82, at ¶¶ 43–48]. AXIS then filed a counterclaim for a declaratory judgment that: (1) the ASAs area not insured under the AXIS policy, (2) money paid to settle the underlying cases are not sums that the County is legally obligated to pay, (3) money paid to defend the underlying lawsuits does not erode or exhaust the retained limit under the AXIS policy, and (4) that several exclusions in the AXIS Policy preclude coverage for the underlying lawsuits. [93, at ¶ 65]. AXIS also requested two alternative declaratory judgments: (1) that the underlying cases arose from separate occurrences or wrongful acts such that the retained limit was never satisfied and (2) that the County breached its duty to cooperate such that AXIS is not obligated to provide coverage. [93, at ¶¶ 67–72].

The Carriers then moved for summary judgment [177; 178], primarily arguing that the County was never legally obligated to pay the settlements and therefore the Carriers have no obligation to pay settlement or defense costs under the policies. After hearing oral arguments, the Court is prepared to rule on the motions.

## II.     Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "On a motion for summary judgment, the moving party has the burden of demonstrating that there are no genuine questions of material fact and that he is entitled to judgment as a matter of law."  *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 (7th Cir. 1994).  Once a party has made a properly supported motion for summary judgment, "the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'"  *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).  As noted above, in evaluating a motion for summary judgment, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party.  *Bell*, 827 F.3d at 704.

## III.     Analysis

### A.     Settlement Costs

Under state law, ASAs are not employees of the County.  See *Biggerstaff v. Moran*, 671 N.E.2d 781, 784 (Ill. App. 1996) (citing *Ingemunson*, 549 N.E.2d at 1270–1272) (finding that a Cook County ASA was "not a Cook County employee").  As such, the ASAs are not insureds under the policies.  [123-9, at 8; 127, at ¶ 6].  The settlements therefore could be covered by the policies only if the County became "legally obligated to pay as damages to compensate others for loss arising out of [its] wrongful acts or personal injury liability to which this insurance applies."

[131, at ¶ 16].

The parties apply different frameworks in their analyses of this key issue. The Carriers focus on the language of the insurance contract, under which the settlements are covered only if the County became "*legally obligated to pay* as damages to compensate others for loss arising out of [its] wrongful acts or personal injury liability to which this insurance applies." [131, at ¶ 16 (emphasis added)]. The Carriers argue that, as a matter of law, counties in Illinois are never required to indemnify ASAs sued in their individual capacities and that the County thus never was and never could be legally obligated to pay damages arising out of the ASA's actions. AXIS also argues that the County breached the voluntary payment provision in its policy. In contrast, the County focuses on the rule articulated by Illinois courts providing that when "an insured settles an underlying claim prior to verdict, it must show that [1] it settled an otherwise covered loss [2] in 'reasonable anticipation of liability.'" *U.S. Gypsum Co. v. Admiral Ins. Co.*, 643 N.E.2d 1226, 1244 (Ill. App. 1994) (quoting *Westamerica Mtg. Co. v. Tri-Cty. Reps., Inc.*, 670 F. Supp. 819, 821 (N.D. Ill. 1987)); see also *Guillen ex rel. Guillen v. Potomac Ins. Co. of Ill.*, 785 N.E.2d 1, 14 (Ill. 2003); *Commonwealth Edison Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 752 N.E.2d 555, 564 (Ill. App. 2001). The County contends that (1) if a court had required it to indemnify the ASAs, that payment would be a loss covered by the policies and (2) whether it settled in reasonable anticipation of liability is a factual question that cannot be answered on the "bare factual record that the Carriers have presented." [133, at 1]. As explained in more detail below, the County has the correct analytical framework: the issue is whether the County (1) settled an otherwise covered loss (2) in reasonable anticipation of liability.

### 1. An Otherwise Covered Loss

The Court must first consider whether the settlement agreement involved an otherwise

covered loss. See *U.S. Gypsum Co.*, 643 N.E.2d at 1244. The Carriers' briefs do not focus much on what an "otherwise covered loss" is. Instead, they focus on the merits of the indemnity issue; that is, they argue that the County would never be legally obligated to pay in the underlying lawsuits because no court would ever find that the County had a duty to indemnify the ASAs. However, the caselaw in this area indicates that whether a claim falls within the scope of coverage does not depend on the merits of the claim; instead, it depends on the language of the policy. For example, in *Federal Insurance Co. v. Binney & Smith, Inc.*, 913 N.E.2d 43 (Ill. App. 2009), Binney, the insured, settled a claim against it related to reports of asbestos in its products. The insurer argued that the claims could not have been a covered loss because the alleged injury was caused by a defective product, which is not covered by the policy, instead of deceptive advertising, which is covered by the policy. *Id.* at 52. The court reviewed the allegations in the underlying action and determined that they involved an advertising injury, and it concluded that the claim was covered. *Id.* at 53. The court then stated: "Binney was not required to prove it was actually liable in the [underlying action] in order to justify the settlement, as [the insurer's] contentions seem to suggest." *Id.*

The logic underlying *Binney* accords with other cases addressing this issue. For example, in *Allied Property & Casualty Insurance Co. v. Metro North Condominium Association*, 850 F.3d 844 (7th Cir. 2017), the Seventh Circuit found that a commercial general liability ("CGL") insurer was not obligated to pay the insured for its settlement of a breach of implied warranty of habitability claim when (1) the only damages for such a claim were the cost of repairing defective conditions and (2) Illinois courts have concluded that CGL policies like the insurer's do not cover these types of damages, *id.* at 847–48. The court did not consider the merits of the underlying claim—that is, whether the insured would be found liable for a breach of implied warranty of

8

habitability. *Allied Property* and *Binney* indicate that, in determining whether an insured settled an otherwise covered loss, it is not appropriate to ask whether the insured would have been found liable for the underlying claim. See also *Commonwealth Edison Co.*, 323 Ill. App. 3d at 983 (explaining that courts should not require an insured "to establish actual liability in order to receive indemnification"); *U.S. Gypsum Co.*, 643 N.E.2d at 1244 (explaining that "in order to recover a settlement, the 'insured need not establish actual liability to the party with whom it has settled'" (quoting *Luria Bros. & Co. v. All. Assur. Co.*, 780 F.2d 1082, 1091 (2d Cir. 1986))). Instead, the issue is whether the policy covers the claim assuming the insured would be found liable.

In contending otherwise, the Carriers rely primarily on *Alliance Syndicate, Inc. v. Parsec, Inc.*, 741 N.E.2d 1039 (Ill. App. 2000), to argue that the County was never legally obligated to pay the settlement agreement. [122, at 7 n.4; 126, at 2; 139, at 9–10; 140, at 6]. In *Alliance Syndicate*, an insured indemnified an uninsured with whom it did business based on a contract between the two parties. *All. Syndicate, Inc.*, 741 N.E.2d at 1044. The insured sought a declaratory judgment that the insurer was obligated "to defend and cover" it and the uninsured in the underlying suit. *Id.* The insurance contract stated that the insurer would "pay sums the insured becomes legally obligated to pay as damages * * * to which the policy applies." *Id.* at 1046. Interpreting the relevant contracts, the *Alliance Syndicate* court found that the insured "voluntarily assumed the liability of" the uninsured and then settled the underlying lawsuit. *All. Syndicate, Inc.*, 741 N.E.2d at 1046. Thus, the Court concluded, "the settlement amount was not a legal obligation to which the insurance policy applied." *Id.*

The Carriers rely on *Alliance Syndicate* to argue that "where there had not been a finding of any obligation to indemnify and the insurer was not a party to the settlement, the policy requirement of 'legally obligated to pay' has not been satisfied." [122, at 7 n.4]. To the Carrier's

point, the Seventh Circuit has stated that "*Alliance Syndicate* stands for the unremarkable proposition that an insurer's obligation to indemnify extends only to parties identified in the policy as a named or additional insured." *Sears, Roebuck & Co. v. Royal Surplus Lines Ins. Co.*, 61 F. App'x 280, 284 (7th Cir. 2003). However, the Court does not find *Alliance Syndicate* particularly persuasive in this context. In that case, any potential indemnity obligation arose from contracts the insured had with the insurer or the uninsured. See *All. Syndicate, Inc.*, 741 N.E.2d at 1046–47. Here, in contrast, the County's potential indemnity obligations were based in state law and were separate claims against the County in the underlying lawsuits. [123-1, at 51; 123-2, at 50; 123-3, at 26–17; 123-4, at 9798]. Moreover, the County does not argue that the Carriers must indemnify the ASAs directly; instead, it argues that the Carriers are obligated to indemnify the County itself for the claims against it. Therefore, the fact that the ASAs are not insureds under the policies does not doom the County's argument.

Further, the Court finds the line of Illinois cases explaining that "[a]n insured becomes legally obligated to pay when a judgment or settlement is reached between the parties" to be more instructive here. *Universal Underwriters Ins. Co. v. LKQ Smart Parts, Inc.*, 963 N.E.2d 930, 937 (Ill. App. 2011); see also *Douglas v. Allied Am. Ins.*, 727 N.E.2d 376, 381 (Ill. App. 2000) (explaining that "in a lawsuit one [becomes] legally obligated to pay" when "a judgment or settlement is reached between the parties"; *Maxum Indem. Co. v. Eclipse Mfg. Co.*, 2013 WL 5993389, at *5 (N.D. Ill. Nov. 12, 2013) ("An insured becomes legally obligated to pay when it agrees to settle a claim.") These cases suggest that after an insured settles, the test articulated in *Guillen* and *Gypsum* applies to ensure that insureds did not collude with plaintiffs to settle the claim. See *Guillen*, 785 N.E.2d at 14. Thus, when insureds settle, the thrust of the analytical work

is done within the *Guillen* framework, not in determining whether the insured is legally obligated to pay.

Here then, the Court determines the scope of coverage by assuming a court found the County legally obligated to pay based on the underlying claim—here, that the County had to indemnify the ASAs—and then analyzing the language of the policy to see if such a claim would be covered. It is true that the Carriers base much of their argument on the policies' "legally obligated to pay" language. However, their analysis stops at their conclusion that a court would never have found that the County was obligated to indemnify in the underlying lawsuits. The Carriers' do not address whether the loss would have been covered by the policies if a court were to have determined that the County was obligated to indemnify the ASAs—regardless of whether the Carriers believe that such a decision would have been legally correct. In order to answer this question, the Court must interpret the policy. In doing so, the Court's "primary objective is to ascertain and give effect to the intent of the parties to the contract." *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 491 (Ill. 2001). "The words of a policy should be accorded their plain and ordinary meaning." *Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 860 N.E.2d 280, 286 (Ill. 2006). "Where ambiguity does exist, the policy will be construed strictly against the insurer, who drafted the policy, and liberally in favor of coverage for the insured." *Id.* (internal citations omitted).

As explained above, the ASAs are not insureds under the policy. However, the Starr Policy includes a Defined Personal Injury Endorsement ("endorsement"), which provides:

> We will pay on your behalf those sums in excess of the retained limit that the insured becomes legally obligated to pay as damages to compensate others for loss arising out of your wrongful acts or personal injury liability to which this insurance applies and that takes place during the Policy period * * *.

[123-9, at 42]. The endorsement defines "personal injury liability" to include "malicious

prosecution," and it states that it "applies to all claims or suits arising solely out of personal injury liability, regardless of the legal theory or cause of action alleged, including but not limited to * * * violations of civil or constitutional rights." [*Id.*, at 42–43]. The AXIS Policy incorporates the endorsement. [132, at ¶ 4].

Given this language, and the absence of any argument from the Carriers on this point, the Court concludes that if a court were to have ordered the County to indemnify the ASAs, then the resulting loss would fall within the scope of the endorsement. First, if a court were to have issued such order (and the order were upheld in any appeals process), the County would have been "legally obligated to pay." Further, the substantive claims in the underlying lawsuit were for personal injury liability resulting from malicious prosecution, which is explicitly covered by the endorsement. The Carriers have not pointed the Court to another portion of the policies indicating that the indemnity claim would not be covered, and, having reviewed the policies in general and the Exclusions section in particular [123-9, at 18–25], the Court has not found any. *Cf. Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335 (7th Cir. 2010) (interpreting an endorsement to an insurance policy where a county "is only an insured 'with respect[] to liability arising out of the activities of the named insured" (alteration in original)). In the absence of any contrary argument from the Carriers,[4] the Court concludes that the County settled a loss that would have been within the scope of the policies.

### 2. Reasonable Anticipation of Liability

Given the conclusion that the settlement was in the scope of coverage, the Court must next determine whether it was made "in 'reasonable anticipation of liability.'" *U.S. Gypsum Co.*, 643

---

[4] For example, the Carriers do not argue that liability arising from an obligation to indemnify another party for personal injury liability is not a "loss arising out of your wrongful acts or personal injury liability." [129-3, at 42].

N.E.2d at 1244 (quoting *Westamerica Mtg. Co.*, 670 F. Supp. at 821). This analysis "involves a commonsense consideration of the totality of 'facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial.'" *Guillen*, 785 N.E.2d at 14 (quoting *Miller v. Shugart*, 316 N.W.2d 729, 735 (Minn. 1982)). "[W]ith respect to the insured's decision to settle, the litmus test must be whether, considering the totality of the circumstances, the insured's decision 'conformed to the standard of a prudent uninsured.'" *Id.* (emphasis omitted) (quoting *Rhodes v. Chi. Ins. Co.*, 719 F.2d 116, 120 (5th Cir.1983)). "Similarly, with respect to the amount of damages agreed to, the test 'is what a reasonably prudent person in the position of the [insured] would have settled for on the merits of plaintiff's claim.'" *Id.* (alteration in original) (quoting *Miller*, 316 N.W.2d at 735).

Thus, whether an insured settled in reasonable anticipation of liability is often a fact-intensive question. The parties' Rule 56.1 statements do not include sufficient factual allegations to conduct this analysis in full. [See 123; 127; 134]. However, if at the time of the settlement there was binding law indicating that the County would not have been obligated to indemnify the ASAs, then the County could not have settled in reasonable anticipation of liability because a prudent uninsured would not opt to settle a claim in direct opposition to binding law. That said, the fact that the law may strongly suggest that the County would not have been obligated to indemnify the ASAs is not enough given the record. For example, if the record were to show that a jury would have very likely awarded hundreds of millions of dollars for the malicious prosecution claims, perhaps settling those claims for almost $30 million was reasonable, even if would have been unlikely that a court would have found that the County had a duty to indemnify. But because those facts are not before the Court, it cannot make such probabilistic determinations. Instead, given the record, the Carriers are entitled to summary judgment only if there is binding law that

the County would not have had to indemnify the ASAs.

### a. The *Carver* Cases and Their Progeny

On this issue, the parties both cite to the trilogy of *Carver* cases—*Carver v. Sheriff of LaSalle County (Carver I)*, 243 F.3d 379 (7th Cir. 2001), *Carver v. Sheriff of La Salle County (Carver II)*, 787 N.E.2d 127 (Ill. 2003), and *Carver v. Sheriff of LaSalle County (Carver III)*, 324 F.3d 947 (7th Cir. 2003)[5]—and their progeny. Prior to filing *Carver I*, the plaintiffs settled a Title VII and § 1983 suit against the Sheriff of LaSalle County in his official capacity. *Carver I,* 243 F.3d at 381. Unsuccessful in their attempts to collect from the sheriff, the plaintiffs then brought an action against LaSalle County, arguing that it either was required to indemnify the sheriff's office or was directly liable. *Id.* Noting that the case raised a recurring question of state law, the Seventh Circuit certified the following question to the Illinois Supreme Court: "[W]hether, and if so when, Illinois law requires counties to pay judgments entered against a sheriff's office in an official capacity. If that court believes that the answer depends on whether the case was settled as opposed to litigated, we would welcome treatment of that distinction as well." *Id.* at 386.

In *Carver II*, the Illinois Supreme Court answered this question as follows:

> [W]e hold that under Illinois law a sheriff, in his or her official capacity, has the authority to settle and compromise claims brought against the sheriff's office. Because the office of the sheriff is funded by the county, the county is therefore required to pay a judgment entered against a sheriff's office in an official capacity. We further hold that this conclusion is not affected by whether the case was settled or litigated.

*Carver II*, 787 N.E.2d at 129. In doing so, the *Carver II* court analyzed section 10/9-102 of the Tort Immunity Act ("TIA"), using three primary analytical steps.[6] That section provides that a

---

[5] The Court notes that different courts have numbered these cases differently, as the case had previously been appealed to the Seventh Circuit and remanded before *Carver I.*

[6] Prior to analyzing the TIA, the court determined that section 5-1002 of the Counties Code, 55 Ill. Comp. Stat. 5/5-1002, did not apply. *Carver II*, 787 N.E.2d at 134–35.

"local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article."  745 Ill. Comp. Stat. 10/9-102.

First, the court determined that the county sheriff is a "local public entity" as defined by the TIA.  *Carver II*, 787 N.E.2d at 135–138.  In doing so, it noted that under the TIA, "local public entity" is "broadly defined" and includes "all other local governmental bodies" not specifically listed in the definition.  *Id.* at 136 (emphasis omitted) (second quoting 745 Ill. Comp. Stat. 10/1-206).  It also explained that the county sheriff's office is "financed by public funds appropriated to that office by the county" and that although the sheriff can collect certain fees, it must "transfer these fees to the county treasurer."  *Id.* at 137.  Second, the court concluded that based on the TIA, "a county sheriff, in his or her official capacity, is vested by the General Assembly with the authority to settle litigation filed against the sheriff's office and to direct the office to pay that settlement."  *Id.* at 138.  Third, the court turned to the question of "the specific mechanism for funding the judgment."  *Id.*  It explained that "the General Assembly has determined that the sheriff's office is to be financed by public funds appropriated to it by the county board" and concluded that, "under this statutory scheme, the county is obligated to provide funds to the county sheriff to pay official capacity judgments entered against the sheriff's office."  *Id.*  It reasoned that "a contrary result would thwart the intent of the legislature in vesting settlement authority in the sheriff pursuant to section 9-102: the sheriff would have the authority to settle a claim, but would have no means to satisfy the resulting judgment."  *Id.* at 138–39.

In *Carver III*, the Seventh Circuit briefly explained that *Carver II* "implies an additional point of federal law: that a county in Illinois is a necessary party in any suit seeking damages from

an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity. Because state law requires the county to pay, federal law deems it an indispensable party to the litigation." *Carver III*, 324 F.3d at 948 (internal citation omitted). It reasoned that in these official-capacity suits, "counties must be named as parties and are entitled to remain in the suit, so that they may veto improvident settlements proposed (at their expense) by the independently elected officers." *Id.*

The Seventh Circuit next dealt with the scope of a county's indemnification obligations in *Robinson v. Sappington*, 351 F.3d 317 (7th Cir. 2003). There, a judicial employee brought Title VII and equal protection claims against a circuit court judge in both his official and individual capacities, a circuit judge in his official capacity, and Macon County. *Id.* at 324–25. The district court granted summary judgment for the defendants. *Id.* at 326. On appeal, Macon County argued that even if the district court erred in granting summary judgment on the merits, it was nevertheless entitled to summary judgment because it was not the plaintiff's employer. *Id.* at 337–38. The Seventh Circuit determined that whether Macon County was a joint employer with the State was a question of fact best addressed by the district court in the first instance. But it also explained that, independent of this factual issue, it "believe[d] that Macon County is a necessary party to this action." *Id.* at 338. The court restated the implied rule from *Carver III*: "[A] county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity." *Carver III*, 324 F.3d at 948. It then explained:

> We believe that the implied rule from the Supreme Court of Illinois' decision in *Carver II* applies with equal force in the present case. The responsibility for maintaining and funding the Macon County Circuit Court lies with Macon County. Under Illinois law, it is responsible for the payment of expenses and judgments emanating from the workings of that court. The fact that some of the parties involved are state officials, as opposed to employees of Macon County, does not

16

alter that fiscal responsibility. Therefore, because Macon County has a financial interest in the outcome of this action, it is a necessary party.

*Robinson*, 351 F.3d at 339 (internal citation omitted). Notably, the *Robinson* Court did not follow *Carver II*'s analysis by first determining whether the Macon County Circuit Court was a local public entity under the TIA.

In *Askew v. Sheriff of Cook County*, 568 F.3d 632 (7th Cir. 2009), Askew, a pretrial detainee at the Cook County Jail, brought individual-capacity claims for excessive force and deliberate indifference against an officer at the jail, Lopez, and a claim for municipal liability against the sheriff. *Id.* at 633. The defendants filed a motion to dismiss, arguing that "because the Sheriff was named as a defendant in Askew's action, Cook County was an 'indispensable' party" under Federal Rule of Civil Procedure 19. *Id.* at 634. The district court granted the motion. *Id.* The Seventh Circuit reversed, explaining that once the district court concluded that the County was a necessary party, it should have ordered the joinder of the County as a defendant instead of dismissing the claim. *Id.* at 635–36. It then stated that the district court also "erred by treating Askew's claim against Lopez and his claim against the defendant Sheriff as one and the same." *Id.* at 636. It explained that although *Carver III* "establishes that the County is a required party for Askew's suit against the Sheriff, it does not answer the analytically distinct question whether the County is similarly required for Askew's suit against Lopez, which was brought against him in his individual capacity." *Id.* On this question, the defendants argued that the County would have been a necessary party to the individual claim against Lopez "because, under state law, the County will necessarily be the entity funding any judgment entered against Lopez." *Id.* at 637. The court rejected this argument as "premature," explaining that because the suit was "a simple one against Lopez in his individual capacity," "[a]ny judgment entered would be against Lopez alone, without regard to any collateral sources to which Lopez might turn to fund that judgment." *Id.* That said,

17

the court also went on to state that "[i]f Askew wins against Lopez, and then if Lopez later tries to collect from the Sheriff in supplemental proceedings, it would then be necessary to join the County as a party to those later proceedings." *Id.* In other words, *Askew* held that "the County does not become an 'indispensable' party just because it may need to indemnify the Sheriff in the future" and "that the County is not a party that must be joined if feasible, within the meaning of Rule 19, in a case brought against Lopez in his individual capacity."[7] *Id.*

The parties draw different lessons from this line of cases. The Carriers argue that these cases, and *Askew* in particular, demonstrate that a county would never be legally obligated to indemnify an ASA sued in their individual capacity. They note that the *Askew* court explicitly held that the County was not a necessary party to the individual-capacity claim against the sheriff's employee, and they argue that if a county is not a necessary party to a case, then it does not have a duty to indemnify. [122, at 10–11; 126, at 9–10; 139, at 2–4; 140, at 2–4]. The Carriers recognize that the *Askew* court went on to explain that if (1) the plaintiff eventually won his individual-capacity claim against the employee and (2) the employee "trie[d] to collect from the Sheriff in supplemental proceedings," then (3) it would "be necessary to join the County as a party to those later proceedings." *Askew*, 568 F.3d at 637. The Carriers argue that this reasoning demonstrates only that a county is a necessary party when a sheriff is sued in an official capacity. [122, at 10–11; 140, at 3–4]. They also argue that such chain of lawsuits contemplated in *Askew* could never

---

[7] The parties also cite to *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509 (7th Cir. 2007), where a plaintiff brought claims against a former sheriff in his individual and official capacities, a sheriff's department, and a county. However, on appeal, the only remaining claims were a *Monell* claim against the current sheriff and claims against the sheriff's department and county that were "derivative of" the *Monell* claim. *Id.* at 514. The court found that the complaint did not state a *Monell* claim. *Id.* at 516. It then stated that it "agree[s] with the plaintiffs that Bureau County would have been a necessary party to the case if the complaint had stated a claim against the Sheriff in his official capacity." *Id.* at 517. Given the limited commentary in *Sims*, and the fact that there was only a *Monell* claim on appeal, the Court does not find it particularly relevant here.

18

have happened in the underlying cases here because the State's Attorney and the Cook County State's Attorney's Office are not local public entities as defined by the TIA. [139, at 3].

The County, on the other hand, asserts that whether a county is legally obligated to indemnify an ASA sued in their individual capacity is a question that remains unanswered by the Illinois Supreme Court or Seventh Circuit. The County argues that, under *Askew*, a county can have a duty to indemnify even if it is not a necessary party. It also highlights that *Askew* speaks to whether a county *must* be named as a defendant in an individual-capacity case against a sheriff's deputy, not "whether the County *could* be named as a defendant." [133, at 19 (emphasis added)]. Moreover, under the County's reading, even assuming the County was not a necessary party in the underlying cases, *Askew* demonstrates that such conclusion does not necessarily mean that the County has no duty to indemnify. The County also emphasizes that the Seventh Circuit in *Robinson* concluded that the "fact that some of the parties involved" in that case were "state officials, as opposed to" Macon County employees, did not alter Macon County's "fiscal responsibility" for the claims. *Robinson*, 351 F.3d at 339; see also [133, at 14]. This conclusion suggests that whether an entity is a "local public entity" as defined by the TIA may not be as relevant as the Carriers suggest.

### b.  Relevant District Court Cases

In addition to these binding cases, the parties cite to several district court cases grappling with this or similar issues. In *Mathlock v. Fleming*, 2019 WL 2866726 (N.D. Ill. July 3, 2019), the plaintiff brought individual-capacity claims against employees of the Cook County Juvenile Temporary Detention Center and asserted that Cook County was a necessary party as an indemnifier. *Id.* at *6. Relying on *Askew*, the Court concluded that the County was not a necessary party for individual-capacity claims and therefore not a necessary party to the suit. *Id.* In *Stone v.*

19

*Pepmeyer*, 2011 WL 1627076 (C.D. Ill. Apr. 28, 2011), the parties, which included Knox County as a defendant, attempted to join the State of Illinois, arguing that the state had a duty to indemnify the defendants under state law. *Id.* at *1. In addition to finding that the Eleventh Amendment barred the joinder, the court also concluded that, per *Askew*, "[a]n entity's potential duty to indemnify does not make it a necessary party." *Id.* at *2. The County distinguishes *Mathlock* and *Stone* on the ground that they were limited to whether a party was necessary under Rule 19, not whether a party had a duty to indemnify. [133, at 19, 22]. And the County notes that the court in *Stone* "observed that *Askew* 'clearly holds that a county need not be joined under Rule 19 in an individual capacity case, *even if the county might eventually be liable for the judgment*.'" [133, at 23 (quoting *Stone*, 2011 WL 1627076, at *3 (emphasis added))].

The County cites to a string of district court cases that it argues together suggest that counties are obligated to indemnify when certain non-county employees, including ASAs, are sued in their individual capacity. In *Patterson v. Burge*, 328 F. Supp. 2d 878 (N.D. Ill. 2004), the plaintiff brought claims arising out of his wrongful conviction against several defendants, including two ASAs and the Cook County State's Attorney in their individual capacities, *id.* at 886; see also First Amended Complaint at ¶¶ 13–14, *Patterson,* No. 03-cv-4433, (N.D. Ill. Dec. 19, 2003), ECF. No 43 (operative complaint specifying these individuals were sued in their individual capacity). The plaintiff brought *respondeat superior* and indemnification claims against Cook County and the Cook County State's Attorney's Office.[8] *Patterson*, 328 F. Supp. 2d at 903. The court dismissed the *respondeat superior* claim against the County because it did not employ the State's Attorney defendants, but it noted that the Cook County State's Attorney's Office "may

---

[8] The plaintiff also brought a *Monell* claim against the Cook County, but the court held that "[b]ecause Cook County was not responsible for the actions of [the State's Attorney defendants], it cannot be sued for damages under *Monell*." *Patterson*, 328 F. Supp. 2d at 899.

be held liable for actions committed by [its] employees in the scope of employment." *Id.* It refused to dismiss Cook County from the indemnity claim because, per *Robinson*, it may be required to pay judgments entered against the Cook County State's Attorney's Office.[9] *Id.*

In *Wallace v. Masterson*, 345 F. Supp. 2d 917 (N.D. Ill. 2004), the plaintiff brought (1) a malicious prosecution and false arrest claim against Masterson, a Cook County Deputy Sheriff, in his individual capacity; (2) *respondeat superior* claims against the Cook County Sheriff and Cook County; and (3) a claim for indemnification under section 9-102 of the TIA against the Cook County Sheriff and Cook County. *Id.* at 919. When considering the indemnification claim, the court reasoned that "a suit or theory imposing liability on the Sheriff for Masterson's actions (whether under § 9-102 or through *respondeat superior* as to the Sheriff) cannot be anything other than a suit or liability against the Sheriff in his official capacity." *Id.* at 926. Relying on the *Carver* cases, the court refused to dismiss the indemnity claim against the county and found the county a necessary party to the suit. *Id.*

In *Cannon v. Burge*, 2006 WL 273544 (N.D. Ill. Feb. 2, 2006), the plaintiff brought federal civil rights and state law claims against several defendants, including several individual-capacity claims against the Cook County State's Attorney and a claim for indemnification under section 9-102 of the TIA against Cook County and the Cook County State's Attorney's Office, *id.* at *16. The court dismissed the indemnification claim against the Cook County State's Attorney's Office because the Eleventh Amendment barred the plaintiff's claims against it. *Id.* at *21. The court

---

[9] The precise phrasing used by *Patterson* is as follows: "Defendant Cook County, though not an employer of any individual defendant for purposes of *respondeat superior* liability nevertheless may be required to pay judgments entered against county officials in their official capacities." *Patterson*, 328 F. Supp. 2d at 903 (internal citations omitted). The individuals sued were either part of the Chicago Police Department or the Cook County State's Attorney's Office. Therefore, the Court considers it appropriate to read "county officials in their official capacities" as equivalent to the Cook County State's Attorney's Office. See *Kentucky*, 473 U.S. at 165 (explaining that official-capacity suits are "another way of pleading an action against an entity").

declined to dismiss Cook County, relying on the *Carver* cases to determine that "finding that [the State's Attorney] was not an employee of the County does not automatically release the County from liability for indemnification." *Id.* The court "note[d] that it does not hold as a matter of law that the County is liable for indemnification," explaining that it instead holds "that based on the arguments before it, dismissing this cause of action as to the County at this stage is inappropriate." *Id.* at *22 n.18.

In *Tillman v. Burge*, 813 F. Supp. 2d 946 (N.D. Ill. 2011), the plaintiff brought civil rights and state law claims against several defendants, including several individual-capacity claims against a Cook County ASA and an indemnification claim against Cook County and the Cook County State's Attorney's Office, *id.* at 954. Similar to *Cannon*, the Court dismissed the State's Attorney's Office pursuant to the Eleventh Amendment, but it found that the complaint adequately alleged a claim for indemnification under section 9-102 of the TIA "contingent upon success of the claims against brought against state and local employees acting within the scope of their employment." *Id.* at 981–82.

In *Armour v. Country Club Hills*, 2012 WL 4499050 (N.D. Ill. Sept. 27, 2012), the plaintiff brought several individual-capacity claims against a Cook County ASA and a section 9-102 indemnification claim against Cook County, *id.* at *2; see also Amended Complaint at ¶ 6, *Armour*, No. 11-cv-5029, (N.D. Ill. Jan. 23, 2012), ECF. No. 35 (operative complaint specifying the ASA was sued in her individual capacity). The County moved to dismiss, arguing that it was not the ASA's employer. *Armour*, 2012 WL 4499050 at *8. The court agreed that there was no basis to hold the County "substantively liable as a defendant under" the TIA. *Id.* However, the court explained that *Robinson* held that "a county may be required to pay a judgment entered against an independently-elected officer who is paid by the county," and concluded that, pursuant to *Robinson*

and *Carter*, "Cook County may have a duty to indemnify [the ASA]." *Id.*

Finally,[10] in *McCullough v. Hanley*, 2018 WL 3496093 (N.D. Ill. July 20, 2018), the plaintiff brought several individual-capacity claims against the former DeKalb County State's Attorney and former ASAs, and he brought a section 9-102 indemnification claim against DeKalb County, *id.* at *4; see also Amended Complaint at ¶ 14, *McCollough*, 17-cv-50116 (N.D. Ill. Sept. 25, 2017), ECF No. 79 (operative complaint specifying these defendants were sued in their individual capacity). The court declined to dismiss DeKalb County, even though the ASAs were not employees of DeKalb County. *Id.* at *18. Relying on *Robinson*, the court explained that "the County has a duty to indemnify State officials, like State's Attorneys, because the County funds the office of that official." *Id.*

### c. Application of Caselaw to Whether the County Settled in Reasonable Anticipation of Liability

If the Court were considering only the question of whether a county must indemnify an ASA sued in their individual capacity, it would perhaps be inclined to agree with the Carriers' analysis. However, that is not the issue facing the Court. Instead, the Court must consider whether, given the state of the caselaw at the time of the settlement, the County settled in reasonable anticipation of liability. As explained above, given the record in the case, the Carriers are entitled to summary judgment only if the answer to this question is a clear and obvious no. Given the discussion above, the Court cannot reach that conclusion.

First, *Askew* is not as dispositive as the Carriers suggest. It is true that *Askew* held that the county was not a necessary party to a suit against Cook County Jail employee in his individual capacity. *Askew*, 568 F.3d at 637. However, *Askew* did not conclude that the county would never

---

[10] The parties cited to a handful of additional cases, but as explained below, this discussion provides sufficient basis for the Court's conclusions.

have to indemnify. *Id.* Instead, it explained that the county "may need to indemnify the Sheriff in the future." *Id.* This suggests that, contrary to the Carriers' arguments, there is not always a one-to-one relationship between whether a party is necessary under Rule 19 and whether it must ever indemnify. And recall that, in determining whether to settle, "the litmus test" for whether an insured acted reasonably "must be whether, considering the totality of the circumstances, the insured's decision 'conformed to the standard of a prudent uninsured.'" *Guillen*, 785 N.E.2d at 14 (quoting *Miller*, 316 N.W.2d at 735). It is likely that a prudent uninsured would opt to settle a case if it may need to indemnify in the future, even if it would not have to immediately indemnify.

Next, in *Robinson*, the Seventh Circuit explained that the fact "that some of the parties involved [were] state officials, as opposed to employees of Macon County" did not alter Macon County's fiscal responsibility. *Robinson*, 351 F.3d at 339. The Court did not analyze whether the Macon County Circuit Court was a local government entity under the TIA. This is a deviation from *Carver II*'s reasoning and suggests an expansion of its holding. *Robinson* also calls into question the Carriers' attempt to distinguish *Askew* on the grounds that the "State's Attorneys and the Cook County State's Attorney's Office are not 'local public entities' within the meaning of the TIA because they are employees and officers of the State of Illinois." [139, at 3]. If the fact that some of the parties in *Robinson* were not Macon County employees did not alter Macon County's fiscal responsibility, then one could reason that the fact that the ASAs are not Cook County employees might not alter the County's fiscal responsibility here.

Further, as the discussion of district court cases above shows, courts are not consistent in this area. The Carriers attempt to distinguish these cases in a variety of ways, including that (1) several were decided pre-*Askew* (such as *Patterson*, *Wallace*, and *Cannon*), (2) others failed to discuss *Askew* (such as *McCullough* and *Armour*), (3) in some, the county defendant conceded that

it may have to indemnify an individual-capacity defendant (such as *Armour* and *Tillman*), and (4) some of the cases against ASAs included the State's Attorney as a defendant (such as *McCullough*). [122, at 16–17; 126, at 13–14; 139, at 4; 140, at 12–14]. However, when the County entered into a settlement agreement, several post-*Askew* district courts indicated that counties are required to indemnify ASAs sued in their individual capacities. See *McCullough*, 2018 WL 3496093 at *18; *Armour*, 2012 WL 4499050 at *8 *Tillman*, 813 F. Supp. 2d at 981–82.[11] That in any of these cases the county defendant conceded that it had an obligation to indemnify does not change these cases' impact. Such a concession could very well affect their persuasive value in ultimately determining whether a county must indemnify in individual-capacity suits against ASAs—but again, that is not the dispositive issue here.

The Carriers also note that in some of the district court cases discussed above, there was also a claim against the State's Attorney's office, and not just an ASA. However, this is not true for all cases. For example, in *Tillman*, the Court dismissed the only claim against the State's Attorney's office while at the same time finding that Cook County may have to indemnify an ASA. *Tillman*, 813 F. Supp. 2d at 954, 981. In *Armour,* there were no claims against the State's Attorney's office. *Armour*, 2012 WL 4499050, at *2. In short, these cases are enough for the County to reasonably conclude that the odds of being obligated to indemnify the ASAs here were non-zero, which is sufficient for the purposes of this motion.

Because whether the County would have had an obligation to indemnify the ASAs is technically an open question—and some district courts ruling on the issue have suggested that the County would have been obligated to indemnify—the Court cannot conclude that the County did

---

[11] Indeed, *McCullough* was issued months before the County settled three of the remaining lawsuits, and the counsel for Plaintiffs in *McCullough* overlapped with counsel for Plaintiffs in the underlying cases here. It is therefore likely that the County was well aware of *McCullough* when deciding to settle.

not settle in reasonable anticipation of liability given the current record. At this stage, the Court has no opinion as to whether the settlement ultimately was reasonable, only that there is a genuine issue of material fact on this point.

### 3. Voluntary Payment

AXIS also argues that the County violated the voluntary payment provision of its policy. That provision provides: "No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." [88-2, at 25]. AXIS argues that its "obligations were never triggered because the underlying Starr Policy has still not exhausted" such that the County's settlement of the underlying lawsuits "without AXIS' consent is a material breach of the AXIS Policy" and that "AXIS owes no obligations to Cook County for the unauthorized settlement." [126, at 2]. However, as explained above, there is a genuine question of material fact as to whether the County settled in reasonable anticipation of liability, and therefore a question of fact as to whether the Starr Policy was exhausted.

### B. Defense Costs

Starr argues that the County is not entitled to any defense costs in the underlying lawsuits. [122, at 7]. In its counterclaims, the County stated that it "incurred $297,463.77 in defense fees and costs on account of ASA Terrence Johnson." [82, at ¶ 32]. Starr argues that it is not liable for these costs because "[a]ny defense coverage under the Starr Policy applies only to the defense of 'the insured' against any suit to which the insurance applies." [122, at 7]. The Starr Policy provides

> We will have the right and duty to defend the insured against any claim or suit
> seeking damages for bodily injury, property damage, personal and advertising
> injury, wrongful acts, employment practice liability wrongful acts or employee
> benefit wrongful acts to which this insurance applies when the retained limit has

been exhausted by payment to a third party of judgments, settlements or defense costs.

[123-9, at 6 (emphasis omitted)]. Starr argues that because the ASAs are not insureds under the policy, it owed them no duty to defend. The County does not respond to this argument. Moreover, in its counterclaims, the County specifically stated that it incurred defense fees and costs not on its own account but "on account of ASA Terrance Johnson." [82, at ¶ 32]. Given the language of the Starr Policy, the County's failure to refute Starr's argument, and the County's admission that the defense fees and costs were on behalf of Johnson, Starr is not obligated to reimburse the $297,463.77 in defense fees and costs the County incurred on behalf of ASA Johnson and this amount does not erode the retained limits of the policies.

## IV. Conclusion

For the reasons above, the motions [177; 178] are granted in part and denied in part. They are granted to the extent that they seek declarations that Cook County Assistant State's Attorneys Terence Johnson and Fabio Valentini are not insureds under the insurance policies and that the Carriers are not liable for the $297,463.77 in defense fees and costs the County incurred on behalf of ASA Johnson. The motions [177; 178] are denied in all other respects. Counsel are directed to file a joint status report no later than October 18, 2021 that includes a statement in regard to any settlement discussions and/or any mutual request for a referral to the assigned Magistrate Judge for a settlement conference. The Court will set further case management deadlines following review of the joint status report.

Dated: September 27, 2021

_____
Robert M. Dow, Jr.
United States District Judge